# Illinois Official Reports

## Appellate Court

---

### *People v. Minniefield*, 2020 IL App (1st) 170541

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GREGORY MINNIEFIELD, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>No. 1-17-0541 |
| Filed | June 11, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 03-CR-1284; the Hon. Maura Slattery Boyle, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Maggie A. Heim, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, and Brian K. Hodes, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Justices Reyes and Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1 Defendant Gregory Minniefield appeals the trial court's denial of his motion for leave to file a successive petition for postconviction relief. Defendant was convicted after a jury trial of first degree murder and sentenced to 25 years for murder, plus a 25-year enhancement for personally discharging a firearm, for a total of 50 years with the Illinois Department of Corrections (IDOC).

¶ 2 On appeal, defendant claims that he has established the cause and prejudice needed to file a successive postconviction petition. His petition raises a single claim: in light of recent law and developing science, his sentence of 50 years without the possibility of parole was unconstitutional as applied to him, where he was only 19 years old at the time of the offense, with no violent criminal history or gang affiliation and with a stable family and work history.

¶ 3 For the following reasons, we reverse and grant him leave to file a successive petition.

¶ 4 BACKGROUND

¶ 5 At trial, defendant did not dispute that the shots from his gun killed the victim. Thus, the issues at trial concerned primarily self-defense and accident.

¶ 6 At trial, Assistant State's Attorney (ASA) John Brady testified that defendant agreed to have his statement videotaped. It was admitted into evidence and published to the jury over defense counsel's objections. In the statement, defendant admitted that, on the day in question, he and the victim were engaged in an ongoing feud over money. While in a vehicle behind the victim's vehicle, defendant fired two shots into the air. Defendant approached the victim's vehicle, grabbed the chain around the victim's neck and demanded the money that the victim owed him. The victim moved, and defendant fired his gun toward the victim's leg. Then, while defendant's handgun was still inside the vehicle, the vehicle moved forward approximately two feet, causing the gun to fire four more times. After the shooting, defendant fled the scene and disposed of his handgun. Defendant stated that he merely intended to scare the victim, not hurt him.

¶ 7 At trial, defendant testified that, in April 2002, he and the victim had a conversation in which the victim denied being involved in an incident with defendant's girlfriend. Early in the afternoon on the day of the offense, defendant was driving with his two-year-old son when the victim opened fire at defendant's vehicle. Defendant found a police officer in the area and reported the incident. However, the officer was forced to leave on an emergency call. At some point during the day, defendant purchased a loaded handgun for his protection.

¶ 8 Later in the evening, defendant was driving with his girlfriend, Nicole Saunders, and his cousin, Erica Simmons, when he recognized the victim's vehicle as it passed him and stopped. Defendant walked toward the victim's parked vehicle, armed with his gun,[1] to talk to the victim about the misunderstanding involving Sanders, defendant's girlfriend. However, the victim said "Oh, s***!" and reached toward something on the floor. Defendant testified that he then fired two shots in self-defense toward "whatever" the victim was reaching for. The victim's vehicle moved forward, but defendant's hand was still inside the vehicle. The driver-

---

[1]Defendant testified: "I had my gun on the side of me."

side window frame hit defendant's gun, causing it to discharge multiple times.[2] Defendant testified that he did not intend to fire the handgun and he did not think that he had shot anyone.

¶ 9     The physical evidence at trial included five bullet casings, fired from defendant's gun and found on the street outside the victim's vehicle. Police also found bullet holes in the driver's side of the vehicle where the victim had been sitting. The back window behind the driver's seat was shot out. While the medical examiner concluded that the victim died of multiple gunshot wounds, the examiner testified that there was one bullet that struck the victim's pulmonary artery and lungs, causing both massive bleeding and a wound on the victim's upper back. When he examined this wound, he could find no evidence of close-range firing.

¶ 10    The State's witnesses, including the victim's passengers and defendant's cousin, testified that defendant instigated the exchange with the victim by firing shots toward the victim's vehicle. After the victim subsequently pulled his vehicle over, defendant approached on foot, and more shots were fired.

¶ 11    The jurors received second degree murder instructions and a self-defense instruction. However, the jury rejected these options and convicted defendant of first degree murder.

¶ 12    At sentencing, the trial court observed that the sentencing range was 20 to 60 years for the murder, plus a mandatory add-on of 25 years to natural life, for personally discharging a firearm that proximately caused death. See 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2018). Thus, the total sentencing range was 45 years to natural life. The court informed defendant: "You'll be serving 100 percent of your time. There is no day for day credit."

¶ 13    The presentence report indicated that defendant was 19 years old on the date of the offense, that he had no juvenile convictions, and that he had completed one year of college. He had three adult convictions, all for simple drug possession, for which he had received either probation or supervision. His possession offenses were for (1) cannabis, 2.5 to 10 grams, with a sentence of 6 months of court supervision; (2) cannabis, 30 to 500 grams, with a sentence of 24 months of probation; and (3) an unnamed controlled substance, with a sentence of 24 months of probation. Prior to his arrest, he lived at a residence with his mother, sister, and grandmother, where he had resided his entire life. Defendant had graduated from high school, where he was on the football and basketball teams. Prior to his arrest, he was employed by United Parcel Services, where his mother also worked. In addition, he had previously worked at Burger King and ABM Janitorial Services. Defendant denied any past or present gang involvement.

¶ 14    At sentencing, the State called as a witness Gloria Ransberry, the victim's mother, who testified about the loss of her son. Defendant called as a witness Rosemary Long, defendant's aunt, who identified the other family members present in the courtroom and who testified about how very sorry they all were for the victim's family. In aggravation, the prosecutor argued primarily about "the senselessness" of the crime and asked for a sentence "well above" the minimum of 45 years.

¶ 15    In response, the defense argued that the jury had not made a separate finding that defendant had personally discharged a firearm and argued that the 25-year firearm enhancement did not apply. The trial court did not find this argument persuasive, observing that the issues

---

[2]Defendant testified that, when the victim "pressed on the gas pedal, *** my hand was still in the car shooting at what I seen him reaching at ***. As he took off, the frame hit the gun and the gun went off."

instruction specifically informed the jury that, to sustain the charge of first degree murder, the State had to prove that defendant had personally discharged the firearm that proximately caused the victim's death.

¶ 16    Prior to sentencing defendant, the trial court found that defendant was "angry at this man for whatever reason," and the court did not know why, but it was sufficient for a finding of first degree murder. In mitigation, the trial court observed that defendant had a good family and had made an effort "to live a decent, respectable life," that defendant had attended high school and had worked, and that he had "no crimes of violence in [his] background" and "no gang involvement."

¶ 17    After considering factors in aggravation and mitigation, the trial court sentenced defendant to "25 years plus a 25 year add on for a total of fifty years" with IDOC. Defense counsel immediately moved the court to reconsider the sentence, arguing that the jury had not made a specific finding, and the trial court denied the motion.

¶ 18    On direct appeal, defendant claimed that his counsel was ineffective for failing to request an involuntary manslaughter instruction because his testimony demonstrated that he acted recklessly when he shot the victim. The appellate court found that, since the record did not disclose whether counsel and defendant discussed this option, "the basis of defendant's ineffective assistance claim wholly relies on matters not of record" and "the claim must be raised in a collateral proceeding," such as a postconviction proceeding. *People v. Minniefield*, No. 1-05-2792, slip order at 6 (2007) (unpublished order under Illinois Supreme Court Rule 23).

¶ 19    Defendant then filed a *pro se* postconviction petition in December 2007, alleging ineffective assistance of trial counsel based on counsel's alleged failure both to request an involuntary manslaughter jury instruction and to investigate witnesses. The trial court summarily dismissed the petition on February 6, 2008, finding his claims frivolous and patently without merit. On May 28, 2010, this court reversed the trial court's summary dismissal, finding that, on the record before it, defendant's "allegation that counsel failed to investigate or present witnesses has an arguable basis in law and fact." *People v. Minniefield*, No. 1-08-0649, slip order at 4 (2010) (unpublished order under Illinois Supreme Court Rule 23) (remanding the case for second-stage proceedings). After remand and appointment of counsel, counsel filed a supplemental petition, which the trial court dismissed on January 15, 2013. This court affirmed the second-stage dismissal of defendant's first postconviction petition on December 31, 2014. *People v. Minniefield*, 2014 IL App (1st) 130535, ¶ 6. On August 14, 2015, this court also affirmed the dismissal of defendant's "Motion to Vacate Conviction/Sentence as Void," which defendant had asked us on appeal to consider as a section 2-1401 petition. *People v. Minniefield*, 2015 IL App (1st) 141094, ¶¶ 1, 4, 5; see 735 ILCS 5/2-1401 (West 2014). On November 3, 2015, defendant filed a *pro se* motion for leave to file a successive postconviction petition, which was also denied, and defendant did not appeal.

¶ 20    On January 19, 2017, defendant sought leave to file his current *pro se* petition, which asks the court to "vacate [his] 50 years sentence." In support, he cites cases that were decided since his sentencing, including *Miller v. Alabama*, 567 U.S. 460 (2012). In *Miller*, the United States Supreme Court found that life without parole for juvenile offenders violated the eighth amendment's prohibition against cruel and unusual punishments, except in rare cases where the crime reflects irreparable corruption. *Miller*, 567 U.S. at 479-80. Defendant also cites

subsequent Illinois cases based on *Miller*, including *People v. Davis*, 2014 IL 115595, *People v. House*, 2015 IL App (1st) 110580,[3] and *People v. Harris*, 2016 IL App (1st) 141744.[4]

¶ 21 Defendant argues that his crime " 'reflects unfortunate yet transient immaturity' " (*Miller*, 567 U.S. 479 (quoting *Roper v. Simmons*, 543 U.S. 551, 573 (2006))) and that he was denied a fair sentencing hearing when the sentencing court failed to consider the mitigating factors of youth, as set forth in *Miller*, 567 U.S. at 476. The statute under which defendant was sentenced requires him to serve every day of his 50-year sentence. Defendant states that he "recognize[s] that *Miller* expressly applied to minors under age 18 years of age, but argue[s] that *Miller*['s] policy concerns applied with equal force to a 19 year old" offender such as himself. In addition, he attached both scholarly and news articles on "young adults" and numerous "certificates of completion" for courses in subjects such as parenting, employment skills, family finance, and anger management.

¶ 22 On January 31, 2017, the trial court denied defendant leave to file his successive postconviction petition. The entire transcript of the hearing for that date states:

> "THE COURT: Gregory Minniefield. Mr. Gregory Minniefield is asking leave to file a successive petition for post conviction relief. Mr. Minniefield's request is denied. Clerk to notify defendant."

On February 7, 2017, defendant filed a timely notice of appeal, and this appeal followed.

¶ 23 ANALYSIS

¶ 24 Defendant's current petition claims that his 50-year sentence is unconstitutional in light of the developing law that began with *Miller* and the developing science concerning young adults. He claims that, as applied to him, his sentence violates both the eighth amendment's prohibition against cruel and unusual punishment (U.S. Const., amend VIII) and Illinois's own proportionate penalties clause (Ill. Const. 1970, art. I, § 11).

¶ 25 However, the first issue for defendant is that he has already filed one petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) and, thus, he now needs the court's permission to file another one.

¶ 26 I. Successive Petition

¶ 27 The Act provides a statutory remedy for criminal defendants who claim that their constitutional rights were violated. *People v. Edwards*, 2012 IL 111711, ¶ 21. However, our supreme court has made clear that both "the Act and our own caselaw" contemplate "only one postconviction proceeding." *Edwards*, 2012 IL 111711, ¶ 22. "Nevertheless, [the supreme] court has, in its case law, provided two bases upon which the bar against successive proceedings will be relaxed." *Edwards*, 2012 IL 111711, ¶ 22. Those two bases are (1) a

---

[3]Since the filing of this petition, the supreme court issued a supervisory order directing this court to vacate our original opinion in *House* and to reconsider it in light of the supreme court's decision in *People v. Harris*, 2018 IL 121932, which we did. *People v. House*, No. 122134 (Ill. Nov. 28, 2018) (supervisory order). After reconsideration, this court issued a new opinion on remand. *People v. House*, 2019 IL App (1st) 110580-B. Earlier this year, the supreme court granted a petition for leave to appeal our new opinion. *People v. House*, No. 125124 (Ill. Jan. 29, 2020).

[4]The appellate court's judgment in *Harris* was later affirmed in part and reversed in part by the supreme court. *People v. Harris*, 2018 IL 121932.

showing of cause or prejudice or (2) a claim of actual innocence. *Edwards*, 2012 IL 111711, ¶¶ 22-23. In the case at bar, defendant alleges only cause and prejudice, so we discuss only that basis below.

¶ 28   Under the cause-and-prejudice test, a defendant must establish both (1) cause for his or her failure to raise the claim earlier and (2) prejudice stemming from his or her failure to do so. *Edwards*, 2012 IL 111711, ¶ 22 (citing *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002)).

¶ 29   "The denial of a defendant's motion for leave to file a successive postconviction petition is reviewed *de novo*." *People v. Bailey*, 2017 IL 121450, ¶ 13; *People v. Wrice*, 2012 IL 111860, ¶ 50 (applying a *de novo* standard of review to the State's argument concerning lack of prejudice to the defendant, since these "arguments raise purely legal issues"). *De novo* consideration means that we perform the same analysis that a trial judge would perform. *In re N.H.*, 2016 IL App (1st) 152504, ¶ 50 (citing *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011)).

¶ 30                                    II. Cause

¶ 31   A defendant "shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings." 725 ILCS 5/122-1(f) (West 2018). In the case at bar, defendant filed his first postconviction petition in December 2007. In 2007, defendant could not have raised a specific claim based on *Miller* and its progeny, where *Miller* was yet to be decided for another five years. *People v. Carrasquillo*, 2020 IL App (1st) 180534, ¶ 108 (where defendant filed his original petition years before *Miller*, we found that he established cause to raise a *Miller* claim, since he "certainly could not have raised a claim based on a line of cases that had not even been decided yet"). Thus, we find that defendant established cause.

¶ 32                                  III. Prejudice

¶ 33   To determine prejudice, defendant asks us to look toward recent law under both the eighth amendment and the proportionate penalties clause.

¶ 34   "The Eighth Amendment's prohibition of cruel and unusual punishment 'guarantees individuals the right not to be subjected to excessive sanctions.' " *Miller*, 567 U.S. at 469 (quoting *Roper*, 543 U.S. at 560). "That right," the United States Supreme Court has explained, " 'flows from the basic "precept of justice that punishment for crime should be graduated and proportioned" ' to both the offender and the offense." *Miller*, 567 U.S. at 469 (quoting *Roper*, 543 U.S. at 560, quoting *Weems v. United States*, 217 U.S. 349, 367 (1910)). "The concept of proportionality is central to the Eighth Amendment." *Graham v. Florida*, 560 U.S. 48, 59 (2010). "And we view that concept less through a historical prism than according to ' "the evolving standards of decency that mark the progress of a maturing society." ' " *Miller*, 567 U.S. at 469-70 (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976), quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (opinion of Warren, C.J., joined by Black, Douglas, and Whittaker, JJ.)).

¶ 35   Like the eighth amendment, the proportionate penalties clause of the Illinois Constitution embodies our evolving standard of decency. See *People v. Miller*, 202 Ill. 2d 328, 339 (2002) ("as our society evolves, so too do our concepts of elemental decency and fairness which shape the 'moral sense' of the community" underlying both the proportionality clause and the eighth

- 6 -

amendment). Specifically, the proportionate penalties clause provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The purpose of the proportionate penalties clause is to add a limitation on penalties beyond those provided by the eighth amendment and to add the objective of restoring the offender to useful citizenship. *People v. Clemons*, 2012 IL 107821, ¶ 39; *People v. Fernandez*, 2014 IL App (1st) 120508, ¶ 63 ("the Illinois Constitution places greater restrictions on criminal sentencing than the eighth amendment's prohibition").

¶ 36    Defendant cites *Miller*, 567 U.S. at 465, in which the United States Supreme Court found that mandatory life without parole for offenders under 18 years old violated the eighth amendment. The Illinois Supreme Court found that the reasoning of "*Miller* applies to discretionary sentences" as well. *People v. Holman*, 2017 IL 120655, ¶ 40; *People v. Buffer*, 2019 IL 122327, ¶ 27 (*Miller* applies to juvenile life sentences, whether "mandatory or discretionary"). Our supreme court found that the key issue is not whether the sentence was mandatory or discretionary but whether a certain process was followed, namely, a sentencing hearing where youth and its attendant characteristics were considered. *Holman*, 2017 IL 120655, ¶¶ 37-38. Thus, life sentences for offenders under 18 years old, whether mandatory or discretionary, violate the eighth amendment, if the trial court failed to specifically consider "some variant of the *Miller* factors." *Holman*, 2017 IL 120655, ¶¶ 40, 43-44. In *Buffer*, 2019 IL 122327, ¶ 27, our supreme court clarified what constituted a life sentence for a juvenile offender. The *Buffer* court found that, for a juvenile, a *de facto* life sentence was a sentence more than 40 years long. *Buffer*, 2019 IL 122327, ¶¶ 40-41; *Carrasquillo*, 2020 IL App (1st) 180534, ¶¶ 40-41.

¶ 37    In the case at bar, defendant readily acknowledges that he was over 18 years old at the time of the offense.[5] Thus, the categorical findings made by *Miller* and its progeny under the federal eighth amendment do not apply to him. See *Harris*, 2018 IL 121932, ¶¶ 49-61 (rejecting a facial challenge under the federal eighth amendment to a life sentence for an offender over 18 years old but under 21 years old).

¶ 38    However, pursuant to *Harris* and its progeny, we find that defendant has established prejudice under Illinois's proportionate penalties clause, for the following reasons.

¶ 39    Defendant argues that Illinois law treats persons under age 21 differently than adults.

¶ 40    Last year, our legislature changed the law to make a person convicted of first degree murder eligible for parole after serving only 20 years, *if* he or she was under 21 years old at the time of the offense and was sentenced after the law took effect.[6] The new statute provides:

---

[5]Defendant was born on January 9, 1983, and the offense occurred on December 8, 2002. Thus, he was 19 years old on the day of the offense.

[6]This section was originally added as section 5-4.5-110(b) of the Uniform Code of Corrections by Pub. Act 100-1182, § 5 (eff. June 1, 2019). However, the section was amended and renumbered as section 5-4.5-115(b) by Public Act 101-288, § 5 (eff. Jan. 1, 2020) (amending 730 ILCS 5/5-4.5-110(b) and renumbering as 730 ILCS 5/5-4.5-115(b)). *House*, 2019 IL App (1st) 110580-B, ¶ 62 (this new act shows "that an individual under 21 *** should receive consideration for their age and maturity").

"A person under 21 years of age at the time of the commission of first degree murder who is sentenced[7] on or after June 1, 2019 (the effective date [of the new act]) shall be eligible for parole review[8] *** after serving 20 years or more of his or her sentence or sentences." Pub. Act 101-288 (eff. Jan. 1, 2020).[9]

Thus, if defendant was sentenced today, he would be eligible for parole after just 20 years, rather than the 50 years required by his sentence. See also *House*, 2019 IL App (1st) 110580-B, ¶ 56 (this court observed a "need to expand juvenile sentencing provisions for young adult offenders").

¶ 41        Under Illinois law, a person between the ages of 18 and 21 may still be legally considered a minor. The Juvenile Court Act of 1987 defines a "[m]inor" as "a person under the age of 21 years subject to this Act" (705 ILCS 405/1-3(10), 5-105(10) (West 2018)), while an " '[a]dult' means a person 21 years of age or older." 705 ILCS 405/1-3(2) (West 2018). A minor may receive certain benefits, such as a station adjustment. 705 ILCS 405/5-301 (West 2018) ("[a] minor arrested for any offense" may receive "a station adjustment"). A station adjustment occurs when a juvenile officer determines that there is probable cause to believe that a minor committed an offense and imposes "reasonable conditions," such as a curfew or community service. 705 ILCS 405/5-301(1)(a), (e) (West 2018). The adjustment is not considered either an adjudication of delinquency or a criminal conviction. 705 ILCS 405/5-301(2)(e) (West 2018); see also 705 ILCS 405/5-305 (West 2018) (probation adjustment); 705 ILCS 405/5-310 (West 2018) (eligible for community mediation programs).

¶ 42        Defendant observes that our state treats under-21-year-olds differently in other ways, such as prohibiting sales to them of alcohol (235 ILCS 5/6-16(a)(i) (West 2018)), cigarettes (Pub. Act 101-2, § 25 (eff. July 1, 2019) (amending 720 ILCS 675/1)), and wagering tickets (230 ILCS 10/18(b)(1) (West 2018)), requiring parental permission to legally own a firearm (430 ILCS 65/4(a)(2)(i) (West 2018)), and limiting Class X sentencing for recidivist offenders to those offenders "over the age of 21 years." 730 ILCS 5/5-4.5-95(b) (West 2018); see also *People v. Mosley*, 2015 IL 115872, ¶ 36 (a ban on handgun possession by " 'minors' " under 21 does not violate the second amendment); 760 ILCS 20/2(1) (West 2018) (Illinois Uniform Transfers to Minors Act defines an adult as one "21 years of age" or older).

¶ 43        In the case at bar, defendant was sentenced to what would have been a *de facto* life sentence without parole, if he had been under 18 years old—which he was not. Our supreme court has found that the proper vehicle for a young adult such as defendant, who is between 18 and 21 years old, to raise an as-applied challenge to a claimed *de facto* life sentence is in a postconviction proceeding. *Harris*, 2018 IL 121932, ¶ 48 (under Illinois's proportionate

---

[7]We observe that a sentencing date is arbitrary, in that two offenders who commit the same offense on the same day could nonetheless serve prison terms that are decades apart, depending only on their sentencing date. If one is sentenced shortly after an offense and another is sentenced years later, the second could be eligible for parole decades before the first.

[8]There are a couple of exceptions that do not apply here, such as if the offender was serving a term of natural life or if the victim belonged to certain categories of persons. Pub. Act 101-288, § 5 (eff. Jan. 1, 2020) (amending 730 ILCS 5/5-4.5-110(b) and renumbering as 730 ILCS 5/5-4.5-115(b)).

[9]Urging passage of this bill, House Majority Leader Barbara Flynn Currie argued that under-21-year-olds are "young people" who "do not always have good judgment." 100th Gen. Assem., House Proceedings, Nov. 28, 2018, at 48-49 (statements of Representative Flynn Currie).

penalties clause); *Carrasquillo*, 2020 IL App (1st) 180534, ¶ 109; see also *Holman*, 2017 IL 120655, ¶¶ 29-30 (where a defendant claims that the evolving science discussed in *Miller* applies to young adults between 18 and 21, the trial court is the most appropriate tribunal for factual development, and it is paramount that the record be sufficiently developed); *People v. Thompson*, 2015 IL 118151, ¶ 44 (appropriate vehicle for an as-applied challenge by a 19-year old offender to a life sentence is a postconviction petition, "including *** a successive petition").

¶ 44    As we observed above, defendant could not have raised such a challenge in his initial postconviction proceeding, and our supreme court has found that a ruling without a developed record is "premature." *Harris*, 2018 IL 121932, ¶ 46; *Carrasquillo*, 2020 IL App (1st) 180534, ¶ 109. "Defendant has shown prejudice by establishing a 'catch-22'[10]—without a developed record, he cannot show his constitutional claim has merit, and without a meritful claim, he cannot proceed to develop a record." *Carrasquillo*, 2020 IL App (1st) 180534, ¶ 109. Thus, we remand for further postconviction proceedings.

¶ 45    The case at bar is readily distinguishable from *Holman*, in which our supreme court found an exception to the general rule that remand to the trial court is required. *Holman*, 2017 IL 120655, ¶ 32. The court found a narrow exception in the interest of judicial economy, because the *Holman* case did not require further factual development. *Holman*, 2017 IL 120655, ¶ 32. Our case is distinguishable because, first, the 17-year-old defendant in *Holman* had no need to develop a record on the evolving science regarding young adults between 18 and 21 years old. See *Harris*, 2018 IL 121932, ¶ 44 ("the defendant in *Holman* fell squarely under *Miller* because he was a juvenile"). Second, the *Holman* record included not only a presentence report but also psychological reports. Lastly, the presentence report in *Holman* concluded that rehabilitation was out of the question, in light of the defendant's long " 'history of senseless criminal acts of mortal violence toward others and lack of remorse for his victims,' " a conclusion with which the trial court agreed. *Holman*, 2017 IL 120655, ¶¶ 48, 50. The instant case is distinguishable since the record does need to be developed with respect to under-21-year-olds in general, and defendant in particular. The record before us contains no similar findings of incorrigibility or psychological reports. Thus, this case does not fall within the narrow exception found in *Holman*.

¶ 46    This case is also distinguishable from this court's opinion in *House*, where we found no need for further postconviction proceedings and remanded the case of a 19-year-old offender directly for a new sentencing hearing. *House*, 2019 IL App (1st) 110580-B, ¶¶ 1, 17, 65-66 (an as-applied challenge under the proportionate penalties clause). In *House*, defendant had filed a motion at his original sentencing hearing, immediately after the imposition of his sentence, to challenge his life sentence as unconstitutional. *House*, 2019 IL App (1st) 110580-B, ¶ 32. Thus, unlike the case at bar, the issue in *Holman* had already been raised and argued in the trial court. *House*, 2019 IL App (1st) 110580-B, ¶ 72 ("the record does not need further development before advancing" to a sentencing hearing); see also *People v. Handy*, 2019 IL

10"A 'catch-22' is defined as '[a] dilemma or difficult circumstance from which there is no escape because of mutually conflicting or dependent conditions.' " *Carrasquillo*, 2020 IL App (1st) 180534, ¶ 109 n.16 (quoting Lexico, https://www.lexico.com/en/definition/catch-22 (last visited June 1, 2020) [https://perma.cc/A52N-HTMM]).

App (1st) 170213, ¶ 33 (rejecting a request for an immediate remand for resentencing, by a defendant who argued that no further hearings on his petition were necessary).

¶ 47 Our supreme court has found that, in general, "a reviewing court is not capable of making an as-applied finding of unconstitutionality in the 'factual vacuum' created by the absence of an evidentiary hearing and findings of fact by the trial court." *Harris*, 2018 IL 121932, ¶ 41. The *Harris* court observed that further development was needed where the record was bereft of evidence of how the evolving science of juvenile maturity affected under-21 offenders and where it "include[d] only basic information about defendant" from the presentence report. *Harris*, 2018 IL 121932, ¶ 46. Similarly, in the case at bar, the record contains no evidence about the evolving science and its impact on defendant's case, and it contains only the basic information from the presentence report. Thus, we remand to the trial court to permit defendant to fill this factual vacuum.

¶ 48                                    CONCLUSION
¶ 49 For the foregoing reasons, we grant defendant's motion for leave to file his successive postconviction petition and remand for further proceedings consistent with this opinion.

¶ 50 Reversed and remanded.