NOTICE

Decision filed 09/09/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 220188-U

NO. 5-22-0188

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 10-CF-1164 |
| | ) | |
| JOHNATHAN MACLIN, | ) | Honorable |
| | ) | Thomas E. Griffith, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Presiding Justice McHaney and Justice Boie concurred in the judgment.

**ORDER**

¶ 1    *Held:* The trial court's denial of defendant's motion for leave to file a successive postconviction petition is affirmed where defendant's motion failed to establish cause.

¶ 2    Defendant, Johnathan Maclin, appeals the trial court's denial of his motion for leave to file a successive postconviction petition. On appeal, he argues that he made a *prima facie* case of cause and prejudice showing that the mandatory 15-year firearm enhancement attached to his 20-year sentence is unconstitutional as applied to him under the proportionate penalties clause of the Illinois Constitution. For the following reasons, we affirm the denial of defendant's motion.

¶ 3                                    I. BACKGROUND

¶ 4    On August 4, 2010, defendant and two codefendants were charged, by information, with two counts of armed robbery (720 ILCS 5/18-2(a) (West 2010)) and three counts of first degree

1

murder (*id.* § 9-1(a)(1)), related to the death of Ishmael Adams on July 30, 2010. On May 24, 2012, the jury found defendant guilty of first degree murder of Ishmael Adams and two counts of armed robbery involving Ishmael Adams and Kieshawn McGee. The jury also found that during the commission of the first degree murder offense, defendant, or one for whose conduct he was legally responsible, was armed with a firearm. Following defendant's conviction, the court ordered the preparation of a presentencing investigative report (PSI).

¶ 5        Additional details and the underlying facts of the case were previously provided in the decisions stemming from defendant's direct appeal (*People v. Maclin*, 2014 IL App (4th) 120722-U (*Maclin I*)) and his postconviction petition (*People v. Maclin*, 2017 IL App (4th) 150221-U (*Maclin II*)) neither of which addressed defendant's sentence. As such, we set forth only the facts necessary to address the issue in the current appeal.

¶ 6        The PSI, filed on July 13, 2012, stated defendant was 20 years old and his parents separated when he was six years old. He lived with his father because his mother had too many children. Defendant had frequent suspensions for acting out in school along with a couple of fights which caused him to fall behind. He did not graduate high school or obtain a GED. He stated that he frequently ran away from his father's house. Defendant had a two-year-old child that lived in Tennessee with the mother. He believed he was one of 21 or 22 children born to his parents. When he was younger, defendant was diagnosed with attention deficit hyperactivity disorder (ADHD) and received medication but stopped taking it when he was 15. Defendant had no history of substance abuse. An addendum to the PSI was filed on July 27, 2012, containing defendant's prior juvenile record. The report revealed that defendant ran away twice from his father's house and also had a charge of unruly behavior on April 5, 2007. On April 26, 2007, defendant was suspended from school for fighting and damaging school property. On June 28, 2007, defendant violated his

curfew and would not comply with household rules. On August 30, 2007, defendant violated curfew, had school problems and was charged with vandalism. On December 10, 2007, he was charged with disorderly conduct. On February 7, 2008, he was charged with unruly behavior. On August 24, 2009, defendant failed to comply with his aftercare program. Shortly after being released from "Henderson House," defendant moved to Decatur, Illinois to live with his grandfather, and within a few months of the move, defendant committed the crimes at issue in the case at bar.

¶ 7　Defendant's sentencing hearing was held on August 1, 2012. The parties agreed that defendant's armed robbery convictions merged with the murder conviction, so no sentence would be applicable for the armed robbery convictions. Neither of the parties had any additions or corrections related to the PSI. The State called Detective David Pruitt who was the lead detective in Ishmael's murder to provide evidence in aggravation. Detective Pruitt interviewed defendant as part of his investigation and defendant stated that Bryain Young also participated in the incident. Bryain was in the front seat of the vehicle that picked up defendant and had a backpack on his lap. Defendant told police he believed Bryain was holding a gun on the driver of the car. Bryain later directed defendant and another codefendant out of the car when they stopped to park, and defendant followed his codefendant to the scene of the robbery. He told police that he ran from the scene but returned to the vehicle after the murder and he and his codefendants were picked up together. The detective stated that defendant was a material witness against Bryain. Thereafter, the State moved to admit a transcript from the July 11, 2012, hearing in which the State attempted to call defendant as a witness against Bryain, but defendant refused to testify despite being provided immunity. Therein, defendant refused to testify because he had already been found guilty and the

court found defendant in direct criminal contempt. The State advised it had no further evidence in aggravation but had one victim impact statement which was read by the victim's mother.

¶ 8    Defense counsel submitted a letter from defendant's employer as evidence in mitigation. The correspondence stated that defendant worked for Decatur Is Growing Gardeners (DIGG), Inc., for 1½ months, where he "regularly reported for work on time and did the work assigned satisfactorily and without complaint." The correspondence further stated that defendant "never caused any trouble on the job and got along well with his co-workers." No further evidence in mitigation was submitted.

¶ 9    The State requested a 50-year sentence, stating that Ishmael was senselessly murdered for $50. It further argued that this was not a quick decision by defendant but "a calculated plan," noting that defendant told his coworker earlier in the day that he did not make enough money at his job and "needed to hit a lick that night." The State explained that "a lick" was a robbery and that one of the codefendant's called defendant and asked him if he wanted to be involved in "a lick." Defendant said "he was down for it" immediately. The State noted that nine telephone calls occurred between 9:45 p.m. and 11:30 p.m. to schedule defendant's pick up and asserted that defendant was not forced into anything, brought his own bandanna to the crime scene, and was holding a loaded gun during the robbery. The State argued about the information in the PSI as well as defendant's refusal to testify against Bryain. The State clarified that it was asking for 35 years for the murder with a 15-year firearm enhancement to reach the total of 50 years. The State clarified that the minimum would be 20 years for the murder plus the 15-year firearm enhancement for a total of 35 years.

¶ 10    Defense counsel argued that defendant was not the shooter in the case and defendant's story never changed; he claimed he did not know what was happening until the robbery started

and then he ran away. He argued that Bryain manipulated all of the codefendants and that defendant was 18 years old when he was arrested.[1] Counsel stated that defendant had a baby born while he was in custody that he had never held. His family was not in attendance for his sentencing. He stated that the juvenile record was mostly nonviolent, defendant left Tennessee, was "swallowed by the streets of Decatur," and was trying to work and be a productive member of society when the incident occurred. He stated defendant worked for DIGG for about six months and worked the day of Ishmael's death. He had good qualities as noted by his employer's correspondence and showed that redemption was possible. His attorney argued that defendant had not yet gotten to the age where his brain matured. He further argued that the shooter received a total sentence of 35 years and therefore requested the court sentence defendant to the minimum of 35 years imprisonment.

¶ 11 In response, the State argued that the shooter cooperated with the State and testified against both defendant and Bryain. He stated those were factors the State considered when he was offered, and ultimately accepted, 35 years for the offense. The State further disputed that Bryain manipulated defendant into the robbery as evidenced by defendant's agreement to be involved.

¶ 12 Defendant waived his opportunity to present a statement in allocution. Thereafter, the court noted that it was a situation "where a much older individual with an extensive prior history influenced people younger than him to engage in acts" but "those who choose to engage in those acts choose to do that by their own volition." The court further noted that defendant was not forced or coerced in any way as it could tell from the evidence and defendant would "have to pay the consequences of your choices." The court noted the offers provided to the codefendant and thought

---

[1]Defense counsel's claim was a misstatement because defendant was 20 years old when he was arrested.

5

it was "appropriate to fashion a sentence that fits the level of involvement, the level of culpability with respect to the crime." It also believed that a strong message was necessary to deter similar crimes that involved gun violence. Thereafter, the court sentenced defendant to 20 years' incarceration for the first degree murder charge with an additional 15 years for the sentence enhancement for a total of 35 years.

¶ 13    On November 30, 2021, defendant filed a motion for leave to file a successive postconviction petition. The petition alleged that the 15-year firearm enhancement was unconstitutional as applied to him. He argued that he established cause for not raising this claim earlier "because the science and caselaw surrounding the sentencing requirements for both juveniles and emerging adults is still developing and the legal basis for his claim did not exist" when he filed his initial postconviction petition. Citing *Miller v. Alabama*, 567 U.S. 460 (2012), *People v. Harris*, 2018 IL 121932, *People v. Minniefield*, 2020 IL App (1st) 170541, *People v. Johnson*, 2020 IL App (1st) 171362, *People v. Chambers*, 2021 IL App (4th) 190151, and *People v. House*, 2021 IL 125124, defendant contended that each case was a stepping stone in juvenile punishment and "opened the door for expanding the concepts in *Miller* to emerging adults" like defendant. Defendant further alleged that he showed prejudice to justify further proceedings, stating that "the mandatory 15-year firearm enhancement he received is unconstitutional as applied to him, in that it violated the proportionate penalties clause of the Illinois Constitution." He stated this met the prejudice prong because the gun enhancement penalty "was imposed without any consideration of his youth" and was unconstitutional "in light of the recent proportionate penalties jurisprudence."

¶ 14    Defendant's affidavit was attached to the petition as exhibit B and addressed his parent's marital status, his father's alcohol and anger issues, his mother's lack of interest, and the physical

abuse between his father and women in general. He stated that he was diagnosed with ADHD and depression and considered suicide. The prescriptions only worsened his depression, so he began smoking marijuana and drinking daily. He alleged that he was sexually molested by a family female friend when he was 11 years old, but his father did not believe him. He stated he was the least favorite person in his household that consisted of 10 people living under one roof. As a result, he sometimes went without food so his brothers and sisters could eat. He had to wear dirty clothes growing up, was abandoned as a child, and remained abandoned because he had not heard from his parents in years.

¶ 15    Defendant also filed a motion to appoint counsel, labeled as exhibit C, and a motion for an expert, labeled as exhibit D. As to the latter, he requested "a psychologist/psychiatrist who is an expert in neurobiological development of adolescents." Therein, he further contended that the 15-year firearm enhancement was unconstitutional as applied to him because it was imposed without considering the *Miller* factors (*Miller*, 567 U.S. 460 (2012)). He stated that he was 20 years old at the time the crime occurred, and his brain was not fully developed. He further claimed that he was, neurologically, more like a juvenile than a fully mature adult due to his family history, childhood trauma, and psychological problems, all of which made him more susceptible to "peer pressure and the transient impulsive behavior that is the hallmark of adolescence." He stated that an expert was necessary to show how his assertions supported his claim.

¶ 16    Defendant's proposed successive petition for postconviction relief was attached as exhibit E. Therein, defendant argued that his 15-year gun enhancement sentence was unconstitutional as applied to him in violation of the proportionate penalties clause of the Illinois Constitution. He claimed that the 15-year gun enhancement was imposed without consideration of his youth, childhood trauma, and immaturity where he was an emerging adult at the time of the offense. In

7

support, citing *People v. Buffer*, 2019 IL 122327, he argued that the sentencing court was required to consider the defendant's youth and attendant characteristics when imposing that sentence. He further cited *House*, 2021 IL 125124, which applied the same reasoning to a defendant who was 19 years old at the time of the offenses, and stated the instant case was nearly identical to *House*, except that he was 20 years old and "did not receive a life sentence, *de facto* or actual." He stated that the sentencing court failed to consider the nine *Miller* factors and that they should apply to him because he was not yet fully mature and his brain had not fully developed. He noted, citing *Minniefield*, 2020 IL App (1st) 170541, that a minor was "defined as anyone under the age of 21" in Illinois and stated youth were "less blameworthy than adults" and deterrence did not work due to the youth's immaturity. He cited Dr. Roben C. Gur, Director of the Brain Behavioral Laboratory at the Neuro Psychiatry Department at the University of Pennsylvania, School of Medicine, who stated the brain did not stop maturing until the early 20s in the parts that governed impulsivity, judgment, future planning, "foresight of consequences, and other characteristics that make people morally culpable." He cited other articles regarding sentence mitigation for youth, as well as section 5-4.5-110 of the Unified Code of Corrections (730 ILCS 5/5-4.5-110 (West 2020)) which allowed for parole review when the person was under 21 years of age at the time of the offense. Defendant contended that the evidence at sentencing showed that he did not plan the crime but "was roped into it by an older individual," was pressured into participating, was not the principal, and was found guilty under a theory of accountability. He also contended he had a high capacity for rehabilitation and had only one disciplinary report since his incarceration that occurred four years earlier. Attached to defendant's proposed petition were articles related to brain development and the transcript from his sentencing hearing.

¶ 17     On March 3, 2022, the trial court issued an order denying defendant's motion for leave to file a successive postconviction petition. The court found that defendant made claims which were "not supported by affidavits, records, or other evidence as required by 725 ILCS 5/122-2" and there were "mere conclusions which have no basis in fact." The court further found that the statute upon which defendant relied, *i.e.*, section 5-4.5-105 of the Unified Code of Corrections (730 ILCS 5/5-4.5-105 (West 2020)), only applied "when a person commits an offense and the person is under 18 years of age at the time of the commission of the offense" and defendant admitted he was 20 years old at the time of the offense. The court refused to "bootstrap" statutory principles even though defendant was two years older than the 18 years required by statute and noted defendant cited no authority to make the legal analogy and no facts regarding his conduct in the murder to support his claim. The court found defendant failed to establish prejudice, noting he received the "absolute minimum sentence after a murder trial, and his sentence is a full five years below the 40-year bright-line rule" recommended for juvenile sentences in murder cases. Defendant appeals.

¶ 18                                    II. ANALYSIS

¶ 19     On appeal, defendant argues that he made a *prima facie* case of cause and prejudice that the mandatory 15-year firearm enhancement was unconstitutional as applied to him under the proportionate penalties clause of the Illinois Constitution. The State disagrees and requests affirmation of the denial. Our review of the trial court's denial of defendant's motion for leave to file a successive postconviction petition alleging cause and prejudice is *de novo*. *People v. Robinson*, 2020 IL 123849, ¶ 39.

¶ 20     The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-2 (West 2022)) permits incarcerated defendants to collaterally attack their conviction by asserting a substantial violation of their constitutional rights at trial. *People v. Edwards*, 197 Ill. 2d 239, 243-44 (2001). A three-

9

stage process is used to evaluate the postconviction petition. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). Only one petition is contemplated by the Act and therefore, successive petitions require leave of court. 725 ILCS 5/122-1(f) (West 2022). "Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim" in the initial postconviction petition "and prejudice results from that failure." *Id.* The statute further clarifies that to show cause the petition must identify "an objective factor that impeded his or her ability to raise a specific claim" in the initial postconviction petition and prejudice is shown "by demonstrating that the claim not raised" during the postconviction proceeding "infected the trial that the resulting conviction or sentence violated due process." *Id.*

¶ 21 As the basis of cause, in the case at bar, defendant contends that he could not bring the claim in his initial postconviction petition because the case law was unavailable at that time. As noted above, defendant's claim is based on an as-applied claim of unconstitutionality pursuant to the proportionate penalty clause of the Illinois Constitution and asserts the trial court failed to consider the *Miller* factors at his sentencing. Defendant's claim of prejudice contends that imposition of the mandatory 15-year firearm enhancement sentence failed to consider his youth, childhood trauma, and immaturity at the time of the offense. It is unclear if he believes the mandatory period should have been lessened or removed *in toto*.

¶ 22 "The constitutionality of a statute presents a legal question" that is reviewed *de novo*. *People v. Swenson*, 2020 IL 124688, ¶ 19. "An as-applied challenge requires a showing that the statute violates the constitution as it applies to the facts and circumstances of the challenging party." *People v. Thompson*, 2015 IL 118151, ¶ 36. "In an as-applied challenge, the challenging party 'protests against how an enactment was applied in the particular context in which the [party] acted or proposed to act, and the facts surrounding the [party's] particular circumstances become

10

relevant.' " *Swenson,* 2020 IL 124688, ¶ 19 (quoting *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 306 (2008)).

¶ 23    The proportionate penalties clause of the Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The purpose of the proportionate penalties clause is to place greater restrictions on criminal sentencing than the eighth amendment's prohibition. *People v. Clemons*, 2012 IL 107821, ¶ 39. "[A]s our society evolves, so too do our concepts of elemental decency and fairness which shape the 'moral sense' of the community" underlying both the proportionality clause and the eighth amendment. *People v. Miller*, 202 Ill. 2d 328, 339 (2002). "A proportionality challenge [to a sentence under the state constitution] contends that the penalty in question was not determined according to the seriousness of the offense." *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005). There are "three distinct ways in which such a challenge may be asserted": (1) a penalty that "is cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community," (2) where similar offenses are considered and the less serious conduct has a more severe punishment, and (3) for offenses containing identical elements but different sentences. (Internal quotation marks omitted.) *Id.*

¶ 24    Although not specifically stated by defendant, the tenor of defendant's *Miller* claim is based on a claim that the penalty is cruel due to defendant's age at the time of the occurrence. See *Harris*, 2018 IL 121932, ¶¶ 44, 55; *People v. House*, 2021 IL 125124, ¶ 69 (Burke, J., specially concurring). Notably, *Miller* claims stem from prior decisions issued in *Roper v. Simmons*, 543 U.S. 551 (2005) and *Graham v. Florida*, 560 U.S. 48 (2010). All of those decisions were based on defendants who were under the age of 18 at the time the crime was committed. See *Miller*, 567

11

U.S. at 465 (aged 14); *Roper*, 543 U.S. at 555 (aged 17); *Graham*, 560 U.S. at 52 (aged 16). Further, the defendants in those cases were given death penalties or life sentences for their crimes. *Miller*, 567 U.S. at 469 (life imprisonment without the possibility of parole); *Roper*, 543 U.S. at 558 (death); *Graham*, 560 U.S. at 57 (life imprisonment without the possibility of parole).

¶ 25    Defendant also relies on *Harris*, 2018 IL 121932 and *House*, 2021 IL 125124, classifying the decisions as "stepping stones in the evolution of how Illinois courts view juvenile punishment that opened the door for expanding the concepts in *Miller* to emerging adults like the petitioner." *Harris* involved an 18-year-old defendant who received a 76-year sentence. *Harris*, 2018 IL 121932, ¶ 1. The court ultimately found his "as-applied" challenge was premature because the record was insufficient to address the claim (*id.* ¶ 48) and found the sentence was not facially unconstitutional noting that claims for extending *Miller* to offenders 18 years of age or older were repeatedly rejected. *Id.* ¶ 61.

¶ 26    It is important to remember that "[s]tatutes are presumed constitutional, and petitioner must overcome that presumption by clearly establishing that the mandatory sentencing statute at issue is invalid when applied to him." *House*, 2021 IL 125124, ¶ 18. In *House*, the defendant was 19 years old at the time the murders occurred and was sentenced to mandatory natural life imprisonment for the murder conviction and 60 years for each aggravated kidnapping conviction which were to run consecutively to the life term. *Id.* ¶ 5. The court again found that further evidentiary development was necessary for the as-applied claim and remanded the case. *Id.* ¶ 32.

¶ 27    Here, defendant readily admits he was 20 years of age when the crime was committed, and that he did not receive a life sentence. Accordingly, his reliance on *People v. Ruiz*, 2020 IL App (1st) 163145, ¶¶ 32-40 (defendant who committed murder at age 18 granted leave to file a successive post-conviction petition challenging his 40-year sentence); *Johnson*, 2020 IL App (1st)

12

171362, ¶¶ 13-31 (same for 19-year-old defendant who received life sentence); *Minniefield*, 2020 IL App (1st) 170541, ¶¶ 37-49 (same for 18-year-old defendant with 50-year sentence); *People v. Bland*, 2020 IL App (3d) 170705, ¶ 14 (same for 19-year-old who received consecutive 28- and 43-year sentences); *People v. Ross*, 2020 IL App (1st) 171202, ¶ 21 (19 years old with 50 year sentence); and *People v. Carrasquillo*, 2020 IL App (1st) 180534, ¶ 4 (18 years old with 200 to 600 year sentence), is equally unwarranted.

¶ 28     As to cause, the defendant must identify an objective factor that impeded the ability to raise a specific claim in the initial postconviction proceeding. 725 ILCS 5/122-1(f) (West 2022). While we do not dispute that case law has evolved regarding *Miller*, the *Miller* decision was issued in June 2012. Defendant's initial postconviction petition was not filed until December 2, 2014. Accordingly, any concerns defendant may have held about not considering the *Miller* factors in conjunction with the mandatory 15-year firearm enhancement were readily available at the time of the initial filing.

¶ 29     Defendant's motion for leave to file successive postconviction petition is further precluded by *People v. Dorsey*, 2021 IL 123010, ¶ 74 and *People v. Clark*, 2023 IL 127273, ¶ 92. *Clark* reaffirmed the *Dorsey* holding that *Miller* did not provide cause for a defendant to raise a claim under the proportionate penalties clause in a successive postconviction petition. *Clark*, 2023 IL 127273, ¶ 92 (citing *Dorsey*, 2021 IL 123010, ¶ 74). *Clark* noted that *Dorsey* involved a juvenile offender (*Dorsey*, 2021 IL 123010, ¶ 4), but found the same reasoning applied to an adult defendant when he committed murder. *Clark*, 2023 IL 127273, ¶ 93. The court concluded that, as was the case with juvenile offenders, Illinois courts were aware that " 'less than mature age can extend into young adulthood—and they have insisted that sentences take into the account the reality of human development.' " *Id.* (quoting *People v. Haines*, 2021 IL App (4th) 190612, ¶ 47).

13

*Clark* concluded that *Miller* did not present new proportionate penalties clause principles with respect to discretionary sentencing of young adult offenders. *Id.* The court found the "defendant 'had the essential legal tools to raise his proposed claim under the proportionate-penalties clause' when he filed his previous postconviction petitions." *Id.* (quoting *Haines*, 2021 IL App (4th) 190612, ¶ 49). It further found that *Miller*'s unavailability did "nothing to explain why defendant neglected to raise the proportionate penalties clause claim in his prior postconviction proceedings." *Id.* ¶ 94.

¶ 30    Moreover, in *People v. Moore*, 2023 IL 126461, ¶ 1, the supreme court addressed a proportionate penalties argument by defendants who were 19 years old when they committed separate murders. *Moore* followed *Clark* and reiterated that *Miller* did not change the law applicable to young adults. *Id.* ¶ 42. "As *Miller* does not directly apply to young adults, it also does not provide cause for a young adult offender to raise a claim under the proportionate penalties clause." *Id.* ¶ 40.

¶ 31    Considering that *Miller* was available at the time of defendant's initial postconviction petition, his failure to present the current claim is insufficient to show cause especially where case law establishes that postconviction petitions filed prior to *Miller* are insufficient to show cause. See *People v. LaPointe*, 2018 IL App (2d) 160903, ¶ 59) (*Miller's* unavailability prior to 2012 "merely deprived defendant of "some helpful support" for his state constitutional law claim, which is insufficient to establish "cause."). Accordingly, we hold that defendant's motion failed to establish cause required for his motion for leave to file a successive postconviction petition. Because defendant failed to show cause, we need not address prejudice. See *People v. Pitsonbarger*, 205 Ill. 2d 444, 464 (2002) ("The cause-and-prejudice test *** is composed of two elements, both of which must be met in order for the petitioner to prevail.").

¶ 32                                  III. CONCLUSION

¶ 33     For the above-stated reasons, we affirm the trial court's denial of defendant's motion for

leave to file a successive postconviction petition.


¶ 34     Affirmed.