2022 IL App (1st) 172581
No. 1-17-2581
Opinion filed March 23, 2022

THIRD DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16 CR 4314 (01) |
| ALLEN FORD, | ) ) | The Honorable Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.

Justices McBride and Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1       After a jury trial, defendant Allen Ford was convicted of first degree murder and sentenced to 46 years with the Illinois Department of Corrections (IDOC).

¶ 2       On this direct appeal, defendant claims that the trial court abused its discretion by instructing the jury to keep deliberating after it sent out a note regarding one holdout juror after deliberating for 4½ hours. Defendant further claims that the trial court's failure to deliver a *Prim* instruction *sua sponte* was plain error. See *People v. Prim*, 53 Ill. 2d 62 (1972); Illinois Pattern Jury Instructions, Criminal, No. 26.07 (4th ed. 2000) (hereinafter IPI Criminal 4th).

¶ 3        Second, defendant, who was 19 years old at the time of the offense, claims that his 46-year sentence is unconstitutional under both the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11).

¶ 4        Lastly, defendant claims that trial counsel's failure to request a *Prim* instruction, as well as trial counsel's failure to challenge the constitutionality of defendant's sentence, establishes the ineffective assistance of his trial counsel. U.S. Const., amend. VI.

¶ 5        For the following reasons we affirm defendant's conviction and sentence.

¶ 6                                BACKGROUND

¶ 7                              I. Evidence at Trial

¶ 8        On this appeal, defendant does not challenge the sufficiency of the evidence against him and does not contest the admission of any testimony or exhibits at trial. Further, defendant does not argue that the evidence was closely balanced. We provide a summary of the evidence below.

¶ 9        On January 4, 2016, at 8:22 a.m., Jeffrey Mattix was shot and killed on a sidewalk near a train viaduct in the village of Oak Park. Charles Williams testified that Mattix, whom he knew, was walking side-by-side with defendant, whom he recognized, when defendant produced a firearm and shot Mattix under the train viaduct. A second witness, Javaun Warren, testified to observing Mattix and defendant, both of whom he recognized, arguing, when defendant produced a firearm and shot Mattix. Williams and Warren both identified defendant as the shooter from photographic arrays.

¶ 10        Police officers at the scene recovered video from nearby Chicago Transit Authority and store surveillance cameras, which showed four individuals walking toward the train viaduct.

Officer Rolando Rodriguez identified the individual walking in front as Mattix based on a match between the clothing depicted in the video and the clothing officers noted Mattix was wearing upon his arrival at the hospital. After Mattix disappeared into the shadows under the viaduct, a second individual, whom the State argued was defendant, also disappeared into the shadows under the viaduct. A moment later, the second individual emerged from under the viaduct running. The other two individuals who had trailed behind Mattix also ran down the same street.

¶ 11        Officer Rodriguez interviewed a school employee who identified these last two individuals as Williams and his younger brother, Elijah, whom Williams testified he was escorting to school that day.

¶ 12                                        II. Jury Deliberations

¶ 13        During jury deliberation, the foreperson of the jury sent out two notes. The first note asked: "Can a conviction be handed down based on circumstantial evidence?"[1] There is no record of the trial court's response to this note. The second note stated: "We have 11 G. 1 N.G. The one does not feel like the vote will change." In response to this note, the trial court returned a note stating: "Dear Jury, Please Continue To Deliberate. Thank You!" Defense counsel moved for a mistrial on the ground that the jury appeared deadlocked. The trial court denied defendant's motion for a mistrial, citing the fact that the jury had been deliberating for only 4½ hours. Defense counsel did not request or tender a *Prim* instruction to the court. An hour and a half after the trial court's note, the jury returned a verdict finding defendant guilty of first degree murder and personally discharging the firearm that proximately caused the victim's death. As

---

[1]The record does not indicate how long the jury had been deliberating when this note was sent out.

relevant to the case at bar, defendant claimed in his posttrial motion for a new trial that the trial court should have granted defendant's motion for a mistrial on the basis that the jury had been deadlocked.[2] The trial court denied defendant's motion for a new trial.

¶ 14                                    III. Sentencing

¶ 15        At sentencing, the State presented, in aggravation, a victim impact statement from Mattix's mother. Defendant, in mitigation, presented four character witnesses: defendant's girlfriend, mother, father, and stepmother.

¶ 16        During sentencing, defense counsel made only brief mention of brain development, stating that defendant "is only 21 years old and his brain is still developing. It's been proven that until they're 25, 26, they're still in a way children." Defense counsel further argued that defendant's age could be seen in "his sense of humor, his occasional cheekiness, inability to grasp consequences, and of his ego."

¶ 17        Defense counsel noted difficult circumstances in defendant's life: that defendant's mother struggled with drug abuse; that defendant was raised since he was three months old by his grandmother, who was so severely diabetic that sometimes defendant was left caring for her; that defendant dropped out of high school to help his grandmother, who was raising his six siblings; and that defendant was shot and was in a coma for a month in 2015, less than a year

---

[2]Defendant's posttrial motion raised the following 11 issues: (1) that the evidence at trial was insufficient to support a guilty verdict on the offense charged in the indictment, (2) that the evidence at trial was insufficient to support a guilty verdict on the charge of first degree murder, (3) that the verdict was against the weight of the evidence, (4) that the defendant was denied due process of law, (5) that defendant was denied equal protection of the laws, (6) that the State failed to prove defendant guilty of the charge beyond a reasonable doubt, (7) that the trial court erred in denying defendant's motion to exclude the video evidence taken from inside the nearby grocery store, (8) that the trial court erred in denying the defendant's motion for a directed verdict, (9) that the State improperly vouched for witnesses Warren and Williams, (10) that the State improperly shifted the burden of proof onto defendant by commenting on defendant's failure to call witnesses on his behalf, and (11) that the trial court should have granted defendant's motion for a mistrial based on the jury note suggesting a possible deadlock.

before the offense in the case at bar. Counsel did not introduce medical records or other evidence to support his arguments about defendant's coma, shooting, or the impact it had on him or any evidence of defendant's brain development. Defendant spoke on his own behalf in allocution, expressing understanding of the pain suffered by the victim's family and asking for the court's mercy in sentencing. The trial court did not indicate, specifically, that it considered these facts in sentencing.

¶ 18    After listening to arguments of counsel, the trial court noted for the record its consideration of "the pre-sentence investigation, the statutory provisions in aggravation and mitigation and the nonstatutory provisions in mitigation." The trial court mentioned that age was an important factor in *Miller v. Alabama*, 567 U.S. 460, 469 (2012), and observed that defendant was 19 years of age at the time of the offense but made no further mention of age.

¶ 19    On September 20, 2017, defendant was sentenced to 21 years for first degree murder, with an additional 25 for the firearm enhancement, for a total sentence of 46 years with IDOC. Defendant filed a notice of appeal on September 27, 2017, and this timely appeal followed.

¶ 20                                ANALYSIS

¶ 21    On this appeal, defendant claims (1) that the trial court erred in failing to provide a *Prim* instruction *sua sponte*, (2) that he was denied the effective assistance of trial counsel, and (3) that his sentence violated the eighth amendment and the proportionate penalties clause, as applied to him.

¶ 22    Specifically, defendant claims, first, that the trial court's failure to issue a *Prim* instruction to the potentially deadlocked jury denied him a fair trial. Second, defendant claims that several errors caused trial counsel's efforts to fall below an objective standard of reasonableness. Third, defendant claims that his 46-year sentence was a *de facto* life sentence imposed without

due consideration of his youth or his particular rehabilitative potential. For the following reasons, we find that (1) defendant was not denied a fair trial when the trial court did not *sua sponte* deliver a *Prim* instruction, (2) trial counsel's representation did not fall below an objective standard of reasonableness, and (3) there is insufficient evidence in the record before us to evaluate defendant's as-applied challenges to his sentence.

¶ 23                                I. "Continue Deliberating" Instruction

¶ 24                                      A. Standard of Review

¶ 25    The trial court has discretion in responding to jury questions, and its response is reviewed only for an abuse of discretion. *People v. Averett*, 381 Ill. App. 3d 1001, 1012 (2008) (citing *People v. Reid*, 136 Ill. 2d 27, 38-39 (1990)). "An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *People v. Hall*, 195 Ill. 2d 1, 20 (2000).

¶ 26                                B. "Continue Deliberating" Instruction

¶ 27    Defendant claims that the trial court's note to "continue deliberating" coerced the jury into rendering a verdict. The State does not argue that this issue was forfeited, and we find that it was preserved for our review.

¶ 28    "A trial court may not 'hasten' a verdict by giving the jury an instruction that has the effect of coercing jurors into surrendering their views." *People v. Boyd*, 366 Ill. App. 3d 84, 99 (2006) (citing *People v. Gregory*, 184 Ill. App. 3d 676, 680-81 (1989)). An instruction to continue deliberating should be neutral and avoid implying that the majority view is correct. *People v. Love*, 377 Ill. App. 3d 306, 316 (2007) (citing *Gregory*, 184 Ill. App. 3d at 681). "The test for determining whether the trial court's comments to the jury were improper in this context is whether, under the totality of the circumstances, the language used by the court actually

6

interfered with the jury's deliberations and coerced a guilty verdict." *People v. McCoy*, 405 Ill. App. 3d 269, 275 (2010).

¶ 29    Defendant argues, as evidence that the trial court's note was coercive, that the single juror holding out against the majority did so for over four hours but then changed his or her mind a mere hour and a half after the "continue deliberating" note from the trial court. This claim relies on the questionable premise that this juror was dedicated to a given outcome the moment he or she began deliberating. Even putting that aside, however, the Illinois Supreme Court has found that a further 45 minutes of deliberation after an instruction is given is sufficient to defeat a claim of coercion. See *People v. Steidl*, 142 Ill. 2d 204, 232 (1991). In *Steidl*, the claim of prejudice arose out of the alleged pressure to reach a verdict caused when the court informed the jury that accommodations for dinner had been made and further arrangements were being made for an overnight stay at a hotel, if no verdict was reached by 10 p.m. *Steidl*, 142 Ill. 2d at 230-31. The defendant in *Steidl* did not request a *Prim* instruction in response to the court's communications with the jury regarding sequestration. *Steidl*, 142 Ill. 2d at 231. The *Steidl* court determined that, since the mention of sequestration was followed by an additional 45 minutes of deliberation, the communication did not prejudice the defendant's rights to a fair trial. *Steidl*, 142 Ill. 2d at 232. Since the deliberations in the case at bar continued for an hour and a half after the note was delivered, we cannot find persuasive defendant's claim of coercion based on the closeness in time of the note to the verdict.

¶ 30    Defendant does not claim that any particular word of the trial court's eight-word note was coercive. The note stated: "Dear Jury, Please Continue To Deliberate. Thank You!" Defendant objects to the fact that the note did not provide further elaboration or instruction, and defense counsel never tendered a *Prim* instruction or an objection to the note's response until after the

jury returned their verdict. The State cites *People v. Pulliam*, 176 Ill. 2d 261, 284-85 (1997), for the proposition that a similar note was deemed noncoercive by the Illinois Supreme Court. In *Pulliam*, the jury asked, " '[w]hat happens if we cannot reach a unanimous decision on either verdict?' " to which the court responded, " '[y]ou have your instructions. Keep deliberating.' " *Pulliam*, 176 Ill. 2d at 284. Similarly, in *Boyd*, 366 Ill. App. 3d at 98-100, the appellate court found that two separate instructions stating, respectively, " 'You have your instructions. Continue to deliberate.' " and " 'Review the instructions and the evidence. Continue to deliberate,' " were neutral, noncoercive, and not plain error. In *Pulliam*, the Illinois Supreme Court found the "keep deliberating" note a proper exercise of discretion. *Pulliam*, 176 Ill. 2d at 285. We can find no significant difference between the note in *Pulliam* and the note in the case at bar. Accordingly, we must find that the note in question was an appropriate exercise of the trial court's discretion.

¶ 31                             II. *Prim* Instruction

¶ 32        Defendant claims that the trial court should have provided IPI Criminal 4th No. 26.07 *sua sponte* and that its failure to do so was plain error. See IPI Criminal 4th No. 26.07. Alternatively, defendant claims that his trial counsel's failure to ask for IPI Criminal 4th No. 26.07 after the jury appeared deadlocked constituted ineffective assistance of counsel.

¶ 33        IPI Criminal 4th No. 26.07 states, in full:

> "The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.
>
> It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment.

Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

You are not partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case."

¶ 34 The committee note to this instruction states that it is taken from *Prim*. The committee note further states that it "takes no position on whether this instruction should be given or under what circumstances it should be given." Illinois Pattern Jury Instructions, Criminal, No. 26.07, Committee Note (4th ed. 2000). Even though it may be a good idea for a trial judge to give a *Prim* instruction whenever a jury appears to be deadlocked, it is not an abuse of discretion to not give such an instruction, especially when the jury has deliberated for only 4½ hours in a murder case.

¶ 35                    A. Second Prong of the Plain Error Doctrine

¶ 36 The plain error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). In a plain error analysis, it is the defendant who bears the burden of persuasion. *People v. Sebby*, 2017

IL 119445, ¶¶ 51-52; see also *People v. Woods*, 214 Ill. 2d 455, 471 (2005). However, "[t]he initial analytical step under either prong of the plain error doctrine is [to] determin[e] whether there was a clear or obvious error at trial." *Sebby*, 2017 IL 119445, ¶ 49; *Piatkowski*, 225 Ill. 2d at 565 ("the first step is to determine whether error occurred"). Defendant argues error only under the second prong of the plain error doctrine.

¶ 37    The Illinois Supreme Court has found that a "defendant must both specifically object at trial and raise the specific issue again in a posttrial motion to preserve any alleged error for review." *Woods*, 214 Ill. 2d at 470; *Piatkowski*, 225 Ill. 2d at 564. No objection was made regarding this issue at trial, and both parties acknowledge that the issue has been forfeited. Defendant claims that the error constituted plain error under the second prong of the plain error doctrine.

¶ 38    In *People v. Clark*, 2016 IL 118845, our supreme court observed that, "although our decisions" in a couple of prior cases "equated second-prong plain error with structural error, we did not restrict plain error to the types of structural error that have been recognized by the [United States] Supreme Court." *Clark* 2016 IL 118845, ¶¶ 25, 46 (discussing *People v. Glasper*, 234 Ill. 2d 173 (2009), and *People v. Thompson*, 238 Ill. 2d 598 (2010)). Thus, second-prong error includes the six categories identified by the United States Supreme Court, but it is not limited to them. *Glasper*, 234 Ill. 2d at 185. The six identified categories of second-prong error are (1) a complete denial of counsel, (2) a biased trial judge, (3) racial discrimination in the selection of the grand jury, (4) a denial of self-representation at trial, (5) a denial of a public trial, and (6) a defective reasonable-doubt instruction. *People v. Johnson*, 2015 IL App (1st) 141216, ¶ 46.

¶ 39 Defendant claims that the trial court's failure to *sua sponte* instruct the jury with IPI Criminal 4th No. 26.07 resulted in a coerced guilty verdict. The primary fact underlying his argument is the jury's note about a potential deadlock. Under defendant's theory, any case where there is evidence of a potential deadlock and the court then fails to provide IPI Criminal 4th No. 26.07 is so flawed as to challenge the integrity of the judicial process. We disagree.

¶ 40 Defendant's claim falls into none of the six recognized categories of second-prong plain error, and we do not find convincing his argument to find error beyond those categories in the case at bar. The trial court possesses broad discretion in deciding when to issue supplemental instructions. *People v. Cowan*, 105 Ill. 2d 324, 328 (1985). Accordingly, the alleged failure to *sua sponte* issue a *Prim* instruction is not second-prong plain error. In addition, as we have previously noted, it is not considered error at all.

¶ 41                                    B. Ineffective Assistance of Counsel

¶ 42                                        1. Standard of Review

¶ 43 In general, the standard of review for determining whether an individual's sixth amendment right to effective counsel was violated is *de novo*. *People v. Hale*, 2013 IL 113140, ¶ 15. "A *de novo* review entails performing the same analysis a trial court would perform." *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011).

¶ 44                                        2. The *Strickland* Test

¶ 45 Defendant claims that his trial counsel's failure to request IPI Criminal 4th No. 26.07 constitutes ineffective assistance of counsel. Both the United States and Illinois Constitutions guarantee criminal defendants the right to the effective assistance of counsel. *Hale*, 2013 IL 113140, ¶ 15 (citing U.S. Const., amends. VI, XIV, and Ill. Const. 1970, art. I, § 8).

¶ 46    The Illinois Supreme Court has found that, to determine whether a defendant was denied his or her right to effective assistance of counsel, an appellate court must apply the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Colon*, 225 Ill. 2d 125, 135 (2007) (citing *People v. Albanese*, 104 Ill. 2d 504 (1984) (adopting *Strickland*)). Under *Strickland*, a defendant must prove both (1) his attorney's actions constituted errors so serious as to fall below an objective standard of reasonableness and (2) absent these errors, there was a reasonable probability that his trial would have resulted in a different outcome. *People v. Domagala*, 2013 IL 113688, ¶ 36 (citing *Strickland*, 466 U.S. at 687, 694). To prevail, the defendant must satisfy both prongs of the *Strickland* test. *Colon*, 225 Ill. 2d at 135.

¶ 47    Under the first prong of the *Strickland* test, the defendant must prove that his counsel's performance fell below an objective standard of reasonableness "under prevailing professional norms." *Colon*, 225 Ill. 2d at 135; *People v. Evans*, 209 Ill. 2d 194, 220 (2004). In considering whether counsel's performance was deficient, a court must indulge a strong presumption that the challenged action or inaction was the result of sound trial strategy. *People v. Smith*, 195 Ill. 2d 179, 188 (2000); *People v. Evans*, 186 Ill. 2d 83, 93 (1999).

¶ 48    Under the second prong, the defendant must show that, "but for" counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *Colon*, 225 Ill. 2d at 135; *Evans*, 209 Ill. 2d at 220. "[A] reasonable probability that the result would have been different is a probability sufficient to undermine confidence in the outcome—or put another way, that counsel's deficient performance rendered the result of the trial unreliable or fundamentally unfair." *Evans*, 209 Ill. 2d at 220; *Colon*, 225 Ill. 2d at 135. In other words, the defendant was prejudiced by his attorney's performance. *People v. Lacy*, 407 Ill. App. 3d 442, 457 (2011).

¶ 49    "It is well settled in Illinois that counsel's choice of jury instructions, and the decision to rely on one theory of defense to the exclusion of another, is a matter of trial strategy." *People v. Falco*, 2014 IL App (1st) 111797, ¶ 16 (citing *People v. Sims*, 374 Ill. App. 3d 231, 267 (2007)). Our supreme court has stated: "Such decisions enjoy a strong presumption that they reflect sound trial strategy, rather than incompetence," and therefore are "generally immune from claims of ineffective assistance of counsel." *People v. Enis*, 194 Ill. 2d 361, 378 (2000).

¶ 50    With regard to the first prong, defendant asserts only that objectively reasonable counsel, advocating zealously, would have known to request IPI Criminal 4th No. 26.07. In view of the fact that defense counsel moved for a mistrial immediately after a potential deadlock was apparent, we cannot find that defense counsel was insufficiently zealous in his efforts to advocate for his client. It was trial counsel's strategy to rely solely on his motion for a mistrial.

¶ 51    The failure to request a jury instruction could be grounds for finding ineffective assistance of counsel, if the instruction was so critical to the defense that its omission denied the accused the right to a fair trial. *Falco*, 2014 IL App (1st) 111797, ¶ 16; *People v. Johnson*, 385 Ill. App. 3d 585, 599 (2008) (citing *People v. Pegram*, 124 Ill. 2d 166, 174 (1988)). However, the omission of a particular instruction must be judged in light of the other instructions given. "Instructions should not be viewed in isolation, but should be considered as a whole." *People v. Hester*, 131 Ill. 2d 91, 98 (1989). Jury instructions are evaluated in their entirety to determine whether they fairly, fully, and comprehensively informed the jury of the relevant law. *Johnson*, 385 Ill. App. 3d at 599 (citing *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 273-74 (2002)).

¶ 52    In the case at bar, we can find no fault in the initial jury instructions provided by the trial court, nor does defendant claim any. We cannot find that the instruction for deadlocked juries

found in *Prim* was so material to his defense that a failure to request it denied defendant the right to a fair trial. As we already noted, every potentially deadlocked case without a *Prim* instruction is not inevitably a challenge to the integrity of our system. *Prim* has never been made mandatory. Our pattern jury instructions take no position on when to give the instruction or whether it should be given at all. *Supra* ¶ 34. Defendant has failed to demonstrate that his attorney's alleged inaction in this particular instance constituted an error so serious as to fall below an objective standard of reasonableness under *Strickland*'s first prong. *Strickland*, 466 U.S. at 687-88.

¶ 53 Since a defendant must meet both prongs of *Strickland* to succeed in a claim of ineffective assistance of counsel and, since defendant has not met the first prong, we need not examine the second. *People v. Graham*, 206 Ill. 2d 465, 476 (2003). For the foregoing reasons, we do not find persuasive defendant's ineffective assistance of counsel claim regarding the *Prim* instruction.

¶ 54                                        IV. Sentencing

¶ 55 Defendant, who was 19 years old at the time of the offense, argues that his 46-year sentence was imposed without due consideration of his youth or his particular rehabilitative potential, and thus violated the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11).

¶ 56 "The Eighth Amendment's prohibition of cruel and unusual punishment 'guarantees individuals the right not to be subjected to excessive sanctions.' " *Miller*, 567 U.S. at 469 (quoting *Roper v. Simmons*, 543 U.S. 551, 560 (2005)). In *Miller*, 567 U.S. at 465, the United States Supreme Court found that mandatory life without parole for offenders under 18 years

14

old violated the eighth amendment. The Illinois Supreme Court has since found that the reasoning of "*Miller* applies to discretionary sentences" as well. *People v. Holman*, 2017 IL 120655, ¶ 40; see *People v. Buffer*, 2019 IL 122327, ¶ 27 (*Miller* applies to juvenile life sentences, whether "mandatory or discretionary"). Our supreme court found that the key issue is not whether the sentence was mandatory or discretionary but whether a certain process was followed, namely, a sentencing hearing where youth and its attendant characteristics are considered. *Holman*, 2017 IL 120655, ¶¶ 37-38. In *Buffer*, 2019 IL 122327, ¶¶ 40-41, our supreme court clarified that for a juvenile, a *de facto* life sentence was a sentence that was more than 40 years long. Thus, an over-40-year sentence for an offender under 18 years old, whether mandatory or discretionary, violates the eighth amendment, if the trial court failed to specifically consider "some variant of the *Miller* factors." *Holman*, 2017 IL 120655, ¶¶ 40, 43-44.

¶ 57     However, offenders, such as defendant, who are 18 years old or older, cannot raise a facial challenge to their sentences under the eighth amendment and the *Miller* line of cases. *People v. Harris*, 2018 IL 121932, ¶¶ 59-61.

¶ 58     As a result, Illinois courts typically consider the sentencing claims of young adults under the proportionate penalties clause rather than the eighth amendment. *E.g.*, *People v. Minniefield*, 2020 IL App (1st) 170541, ¶¶ 37-38 (considering a 19-year-old defendant's as-applied sentencing claim under the proportionate penalties clause rather than the eighth amendment). "This is because federal cases have generally drawn a line at 18 years of age" and "because *** the [Illinois] proportionate penalties clause offers a broader path to the same types of relief." *People v. Franklin*, 2020 IL App (1st) 171628, ¶ 51 (18-year-old defendant);

see *People v. Savage*, 2020 IL App (1st) 173135, ¶ 61 (22-year-old defendant); *People v. Ross*, 2020 IL App (1st) 171202, ¶ 20 (19-year-old defendant).

¶ 59    Specifically, the proportionate penalties clause provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art I, § 11. "The purpose of the proportionate penalties clause is to add a limitation on penalties beyond those provided by the eighth amendment and to add the objective of restoring the offender to useful citizenship." *Minniefield*, 2020 IL App (1st) 170541, ¶ 35; see *Franklin*, 2020 IL App (1st) 171628, ¶ 55; *Savage*, 2020 IL App (1st) 173135, ¶ 65. Thus, the proportionate penalties clause goes further than the eighth amendment in offering protection against oppressive penalties. *Minniefield*, 2020 IL App (1st) 170541, ¶ 35; *People v. Clemons*, 2012 IL 107821, ¶ 39; *People v. Fernandez*, 2014 IL App (1st) 120508, ¶ 63 ("the Illinois Constitution places greater restrictions on criminal sentencing than the eighth amendment's prohibition"). "Unlike other constitutional provisions affecting criminal defendants, these two provisions—the eighth amendment and the proportionate penalties clause—are not in lockstep." *Franklin*, 2020 IL App (1st) 171628, ¶ 55; see *Savage*, 2020 IL App (1st) 173135, ¶ 65.

¶ 60    In this appeal, defendant claims that his 46-year sentence was a *de facto* life sentence. See *Buffer*, 2019 IL 122327, ¶ 40. The State argues that his claim was forfeited by his failure to raise it at sentencing. Defendant was sentenced on September 20, 2017. *Buffer* was decided over a year later, on April 18, 2019. Defendant could not have raised a *Buffer* claim before *Buffer* was decided. *Buffer*, 2019 IL 122327. Therefore, he has not forfeited this claim.

¶ 61    As this court has stated before, we "do not mean to impugn the abilities or conscientiousness of the judge below." *People v. DiCorpo*, 2020 IL App (1st) 172082, ¶ 57.

16

Rather, we are aware that the law regarding juvenile and young adult sentencing has been a rapidly evolving area of the law, and the court below did not have the benefit of our supreme court's more recent cases in this area such as *Buffer*, 2019 IL 122327, *People v. House*, 2021 IL 125124, *Harris*, 2018 IL 121932, and our own recent cases, such as *DiCorpo*, 2020 IL App (1st) 172082, *Franklin*, 2020 IL App (1st) 171628, *Minniefield*, IL App (1st) 170541, and *People v. Jones*, 2021 IL App (1st) 180996.

¶ 62    Our supreme court has found that the proper vehicle for a young adult such as defendant, who is between 18 and 21 years old, to raise an as-applied challenge to a life sentence is in a postconviction proceeding. *Harris*, 2018 IL 121932, ¶ 48; *People v. Thompson*, 2015 IL 118151, ¶ 44 (appropriate vehicle for an as-applied challenge by a 19-year-old offender to a life sentence is a postconviction petition, "including *** a successive petition"); *Minniefield*, 2020 IL App (1st) 170541 (19-year-old defendant); *People v. Carrasquillo*, 2020 IL App (1st) 180534 (18-year-old defendant); *Savage*, 2020 IL App (1st) 173135 (22-year-old defendant); *Franklin*, 2020 IL App (1st) 171628 (18-year-old defendant); *People v. Glinsey*, 2021 IL App (1st) 191145 (18-year-old defendant); *Jones*, 2021 IL App (1st) 180996 (19-year-old defendant). When a defendant claims that the evolving science discussed in *Miller* and other cases applies to young adults between 18 and 21, the trial court is the most appropriate tribunal for factual development, and it is paramount that the record be developed for this purpose. *Holman*, 2017 IL 120655, ¶¶ 29-30. A ruling without a developed record is "premature." *Harris*, 2018 IL 121932, ¶ 46; *Carrasquillo*, 2020 IL App (1st) 180534, ¶ 109.

¶ 63    As in *Harris*, 2018 IL 121932, ¶ 46, and in *Minniefield*, the record in the case at bar contains "no evidence about the evolving science and its impact on defendant's case." *Minniefield*, 2020 IL App (1st) 170541, ¶ 47. Other than a passing reference to age and the

17

evolving science, the record was not developed at all to support defendant's as-applied constitutional claim. *Supra* ¶ 16. The record also contains no evidence regarding defendant's coma or whether any lingering effects or trauma from the coma and shooting of defendant interacted with his age-related development. The case at bar, like *Harris*, is a direct appeal. Thus, as the supreme court did in *Harris*, we "observe[ ] that the defendant [is] not necessarily foreclosed from raising his as-applied challenge in another proceeding," such as pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)). *Harris*, 2018 IL 121932, ¶ 48. "The Post-Conviction Hearing Act specifically allows for raising 'constitutional questions which, by their nature, depend[ ] upon facts not found in the record.' " (Internal quotation marks omitted.) *Harris*, 2018 IL 121932, ¶ 48 (quoting *People v. Cherry*, 2016 IL 118728, ¶ 33). Since this is a direct appeal, we cannot remand for an evidentiary hearing to allow the necessary scientific evidence to be presented, and we must find that there is insufficient evidence in the record to support defendant's claim that his sentence is unconstitutional as applied to him under the proportionate penalties clause.

¶ 64 In the alternative, defendant argues that his trial counsel was ineffective for failing to develop this claim at defendant's sentencing hearing. Since most of the cases cited by defendant on appeal to support this issue were decided after his sentencing hearing, we cannot find that counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88.

¶ 65           CONCLUSION

¶ 66 For the foregoing reasons, we affirm defendant's conviction and sentence.

¶ 67 Affirmed.

---

**No. 1-17-2581**

---

| | |
|---|---|
| **Cite as:** | *People v. Ford*, 2022 IL App (1st) 172581 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 16-CR-4314(01); the Hon. Vincent M. Gaughan, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Sean Collins-Stapleton, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Brian A. Levitsky, and Adam C. Motz, Assistant State's Attorneys, of counsel), for the People. |