2023 IL App (1st) 211592 -U

No. 1-21-1592

Order Filed on: June 9, 2023

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 14882 |
| | ) | |
| RANDELL BROWN, | ) | Honorable |
| | ) | William Raines, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE C.A. WALKER delivered the judgment of the court.
Presiding Justice Mikva concurred in the judgment. Justice Tailor dissented.

**ORDER**

¶ 1   *Held*: Defendant's conviction for burglary is reversed where the trial court abused its discretion by failing to answer the jury's legal question, and coercing and threatening the jury.

¶ 2   Following a jury trial, defendant Randell Brown was convicted of burglary (720 ILCS 5/19-1(a) (West 2018)) and sentenced to a term of 10 years. He appeals, arguing that: (1) the trial court erred and coerced the jury by failing to answer the jury's question and giving an improper

instruction; and (2) his sentence was excessive because his sentence is disproportionate to the nature of the offense. For the following reasons, we reverse.

¶ 3                                    I. BACKGROUND

¶ 4      Brown was charged with burglary, possession of burglary tools, and identity theft relating to an incident that occurred on August 24, 2019. In April 2021, the State offered Brown four years in prison in exchange for a guilty plea to a reduced charge of Class 3 burglary, where his criminal background required a statutory minimum of six years based on mandatory Class X sentencing. The trial judge explained the State's offer, stating:

> "So, the State is basically offering you a minimum sentence if you wanted to accept
> this. But you have to understand if we go to a jury trial and a jury finds you guilty,
> I'm forced by law to sentence you somewhere between 6 to 30 years. And based on
> your criminal history, you're double digits all day long."

Brown rejected the offer, explaining that he had a pacemaker and was going through "medical problems."

¶ 5      On October 12, 2021, the day before the trial, Brown asked the court if he could accept the State's offer of four years. The trial judge responded:

> "I had a conversation with you. I talked to your lawyer in front of you. You
> indicated to me that you were not interested in resolving this by way of a guilty
> plea. Here's the problem with taking a plea today. And I'm just going to be honest
> with you. The State's prepared. Their witnesses are ready. Your attorney's prepared.
> She's ready. Everybody has spent so much time and effort on your case that if we
> were to take a plea today and give you that original offer, it's not fair to all the work
> they've done. We asked you a number of times if you wanted to resolve it.

\*\*\*

So tomorrow we're going to have a jury trial unless the state wants to revise the offer upward. That's something they can consider but I wouldn't accept a plea today of four years."

¶ 6     On the day of trial before jury selection, the trial judge addressed the jury:

"The lawyers and I estimate that this case will last approximately two days. My game plan is to finish it today and have you come back tomorrow morning for closing arguments and deliberation. Our usual workday will be from 9:00 to 5:00, but it's possible we may go later if necessary. When I say necessary, that would be for deliberations. I respect your time, many of you have families, children, work obligations, things of that nature, and I would rather go longer than later because it's important that you get home at a safe hour and be with your family. So that's how I do things."

After the jury was selected, the court provided further instruction by stating:

"Under the law the defendant is presumed to be innocent of the charges against him, the presumption remains with him throughout every stage of the trial and during your deliberations on your verdict and is not overcome unless from all of the evidence, you are convinced beyond a reasonable doubt that the defendant is guilty."

¶ 7     During trial, Chicago Police Officers Bogdan Kalynyuk and Tiffany De Le Rosa testified to the events that occurred on August 24, 2019. The officers were working patrol at approximately 4:10 a.m. on South Blue Island. Both officers heard a car alarm and drove south in the direction of the alarm. Within 30 to 40 seconds, the officers eventually arrived at 14th and Racine, where they

spotted Brown walking at a "fast pace" with a shopping cart. The officers found the source of the alarm seconds later, a Ford F-150 that appeared to have been burglarized. The passenger window on the truck was broken, and several items were on the ground. Observing no other individuals in the area, the officers drove back in the direction of where they saw Brown.

¶ 8     The officers drove northbound on Racine and spotted Brown running eastbound with a shopping cart. Officer Kalynyuk exited the vehicle to pursue Brown. According to Officer Kalynyuk, Brown abandoned the shopping cart and started running when he noticed him. Officer Kalynyuk pursued Brown and ordered him to stop. Brown continued to run until he climbed over a fence of an apartment complex, where he hid until Officer Kalynyuk found him. Officer De La Rosa eventually joined Officer Kalynyuk, and Brown was placed into custody.

¶ 9     Upon being arrested, Brown was searched. In his possession, Brown had a screwdriver and a flashlight. Officer De La Rosa testified that she found the wallet of Alexander Alfaro a few feet from where Brown was apprehended. In the shopping cart, Officer Kalynyuk found a fireman's uniform with the name Alfaro, a bucket, bags, and power tools with the initials A.A. on them.

¶ 10     Alexander Alfaro testified that in addition to working for the city of Chicago as a firefighter, he also had a job as a plumber. On the night of the incident, Alfaro was working as a plumber and left his power tools, copper fittings, toolbox, and a gym bag with his firefighter uniform in his gray Ford F-150. Alfaro received a call from the police on the morning of August 24 informing him that his truck was burglarized. Alfaro went to the 12th district police station to identify and retrieve his belongings.

¶ 11     Brown testified that he was 56 years old and received disability income due to problems with his heart. Brown supplemented his income by "junking," where he would walk through alleys and collect items such as aluminum and copper and sell them at a scrapyard. Brown stated that he

ordinarily kept tools like screwdrivers, gloves, and a flashlight. On the night of the incident, Brown was walking from his brother's house to his sister's apartment at 1401 S. Blue Island. Brown lived with his sister in a senior citizen building. Brown stated that he would often jump over the fence to get in the complex because it was quicker than going around the complex to reach the gate. Brown admitted to seeing a shopping cart that night but denied that it belonged to him. Brown stated that he saw other people in the area but did not know why the police were chasing him.

¶ 12    The following day, both parties made closing arguments. Prior to the jury deliberating, the trial judge instructed the jury in part:

> "Neither by these instructions nor be any ruling or remark which I have made do I mean to indicate any opinion as to the facts or as to what your verdict should be.
>
> ***
>
> The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. The defendant is not required to prove his innocence.
>
> ***
>
> Your agreement on a verdict must be unanimous. Your verdict must be in writing and signed by all of you, including your foreperson."

¶ 13    Jury deliberations began at 10:52 a.m. Sometime during deliberations, the jury sent two notes to the court. One note had two questions. The first question was: "Did the defendant hear the car alarm or hear a car alarm? If so, where was he?" The second question was: "Is there any camera footage of the officers approaching the car?" The trial judge responded, "You have heard all of the evidence presented at trial. Please continue to deliberate." The second note asked for a transcript of Brown's testimony. The court provided Brown's transcript, and they continued to deliberate.

Further into deliberations, the jury sent the court a question asking, "If the decision comes down to 11 to 1, is the defendant to be found not guilty?" The trial judge ordered the lawyers to return to the court room, but prior to their arrival, the judge stated, "So what I am going to do is this: I am going to give them a *Prim* instruction, so everyone needs to come down." The trial judge decided to give a *Prim* instruction in response to the question.

¶ 14    Brown's counsel objected, arguing that a *Prim* instruction was premature. Brown's counsel offered the following answer to the jury's question:

> "If the jury is not able to reach a unanimous verdict in a criminal case, the case remains on the Court's docket. If the defendant isn't found either guilty or not guilty, no judgement is entered, and the Cook County State's Attorneys is entitled to prosecute the case before the jury."

¶ 15    The trial judge asked if defense counsel was asking the court to hang the jury. In response, the following exchange occurred:

> Defense Counsel: "No. They asked a question. This is the answer, and they can then continue to deliberate. They have not said they are hung yet.
>
> \*\*\*
>
> State: We would be objecting to this. This clearly does give the jury an out, which would allow Your Honor to hang this jury, and we would advise this is not proper.
>
> THE COURT: Yeah, I am not doing it.
>
> Defense Counsel: I would ask to have it marked as a proposed exhibit and made part of the record.
>
> THE COURT: Okay. Bring the jury out.

Defense Counsel: Your Honor, additionally, I have another issue. It's my understanding that the State is planning on giving a *Prim* instruction.

THE COURT: I am. I plan on it.

Defense Counsel: It is the Defense's position that the *Prim* instruction that we think the Court is about to give would be a misstatement of the law and I would object to it. We do have an alternative. Our concern is the final line of the pattern instruction, which says it is the job of the jury to seek the truth. It is the Defense's position that that is an incorrect statement. What their job is -- It's their job to determine if the State has met the burden beyond a reasonable doubt. I do have an alternative instruction with that language that I propose to the court to give instead."

¶ 16    The State objected to the proposed instruction and argued:

"Looking at *People v. Prim* 53 Ill. 2D 62, 1972, which is cited in the committee notes to the IPI, the language that Your Honor has before him is the language of the Illinois Pattern Jury Instruction that's recommended to be given in this case. I don't think that the Defense has made a compelling argument about why we should deviate from that."

Defense counsel argued that the State's proposed instruction would misstate the purpose of a jury. The trial judge denied the defense counsel's proposal.

¶ 17    The trial judge gave the following instructions in response to the jury's question:

"I am going to answer your question this way: The verdict must represent the considered judgement of each juror. In order to return a verdict, it is necessary that each juror agree to it. Your verdict must be unanimous. It is your duty as jurors to consult with one another and to deliberate with a view towards reaching an

agreement if you can do so without violence to an individual judgement. Each of you must decide the case for yourself and to do so only after an impartial consideration of the evidence with your fellow jurors.

In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous, but do not surrender your honest conviction as to weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

You are not partisans. You are judges of the facts. Your sole interest is to ascertain the truth from the evidence in this case. You will continue to deliberate. At 5:00, 5:30 or so if you're still deliberating, I am bringing you back tomorrow and you will deliberate again. And we are going to do this until I decide otherwise. Please go back to the jury room and continue to deliberate."

¶ 18    There is conflicting evidence as to the time of the jury note. During the post-trial motion hearing, the trial judge stated "I have in my hand the jury question that came out on October 14th at 1:46 p.m." After the State and defense counsel were asked to provide a bystander's report, they averred that the *Prim* instruction was given at 1:10 p.m., and the jury reached its verdict at 3:10 p.m. The "criminal disposition sheet" that was signed by the trial judge shows that the *Prim* instruction was given at 2:15 p.m. and the verdict was 3:40 p.m. Nonetheless, either time frame demonstrates that the jury had deliberated for only a few hours when they sent the note, and in less than 2 hours of the *Prim* instruction, the jury returned with a verdict of guilty. The jury was polled, and each juror affirmed the verdict of guilty.

¶ 19    Brown filed a motion for a new trial on November 23, 2021. Brown's counsel argued *inter alia* that the State failed to prove Brown guilty beyond a reasonable doubt; the trial judge erred by

not answering the jury's question as to what would happen to Brown if the jury was not unanimous; erred by giving IPI 26.07 because it misstated the law; and telling the jury that they could come back the following day to deliberate while the jury was still deliberating early in the afternoon. The court denied Brown's motion, reasoning that the jury's question indicated they were deadlocked and that the court had the discretion to give a *Prim* instruction.

¶ 20 At sentencing, the State rested in aggravation and did not recommend a sentence. In mitigation, Brown informed the court that he received social security income for a disability due to his heart and kidney condition and reiterated that he had a pacemaker. Brown submitted a letter from Roy Lee Murray, who explained that he had significant physical disabilities, and Brown would assist him with tasks daily. In allocution, Brown stated that he did not commit the burglary, he sympathized with the victim, and asked the court to take his physical condition into consideration. The court believed Brown to be lying and mentioned that Brown was sentenced to serve 41 years in the Illinois Department of Corrections throughout his lifetime. The court stated that it took Brown's age, aggravation, mitigation, lack of allocution, and criminal history into consideration, and sentenced Brown to 10 years in prison.

¶ 21 Brown filed a motion to reconsider, alleging that the trial judge's sentence was excessive, the judge improperly considered matters in aggravation, and that the sentence improperly penalized him for exercising his right to trial. The judge denied Brown's motion to reconsider, and Brown now appeals.

¶ 22                                   II. JURISDICTION

¶ 23 Brown was sentenced on November 23, 2021, and filed a timely notice of appeal on December 7, 2021. This court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art VI, § 6), and Supreme Court Rules 603 and 606, governing

appeals from final judgments of conviction in criminal cases (Ill. S. Ct. R. 603 (eff. Feb. 6, 2013); R. 606 (eff. Mar. 12, 2021)).

¶ 24                                    III. ANALYSIS

¶ 25    On appeal, Brown argues: (1) the court coerced the jury to reach a verdict by refusing to answer the jury's question and giving a *Prim* instruction after learning that the jury was one vote short of a guilty verdict; and (2) sentencing him to 10 years for breaking into a truck was excessive.

¶ 26    Brown asserts that the trial judge should have answered the jury's question, rather than provide a *Prim* instruction. He contends that the trial judge's refusal to answer the jury's question violated his right to a fair jury trial. Brown also claims the judge's failure to answer the jury's question, and decision to instead give an "improper" *Prim* instruction coerced the jury to reach a verdict of guilty. The State responds by arguing that the trial judge's instructions were given in a non-coercive manner, and the judge's decision to give the *Prim* instruction when he believes the jury is deadlocked is supported by law and encouraged by the pattern instructions.

¶ 27    The trial judge has a duty to provide instruction to the jury when the jury has posed an explicit question or requested clarification on a point of law arising from facts about which there is doubt or confusion. *People v. Childs,* 159 Ill.2d 217, 228-29 (1994). "When a jury makes explicit its difficulties, the court should resolve them with specificity and accuracy." *Id.* Under certain circumstances, the court has the discretion to refuse to answer a jury's question "when the jury instructions are readily understandable and sufficiently explain the relevant law, when additional instructions would serve no useful purpose or may potentially mislead the jury, when the jury's request involves a question of fact, or when giving an answer would cause the trial court to express an opinion likely directing a verdict one way or the other." *People v. Averett*, 237 Ill.

2d 1, 24 (2010). While under the appropriate circumstances, a trial court may exercise its discretion to refrain from answering a jury's inquiries, our supreme court has recently reminded us that:

> "Generally, jurors are entitled to have their questions answered. (Internal citations omitted.). When the jury asks a question on a point of law, when the original instructions are incomplete, or when the jurors are manifestly confused, the court has a duty to answer the question and clarify the issue in the minds of the jurors. (Internal citations omitted.) Further, under certain circumstances, a circuit court has the duty to answer a jury's question even if the jury received proper instructions. (Internal citations omitted). When a jury makes explicit its difficulties, the court should resolve them with specificity and accuracy. (Internal citations omitted.) The failure to answer or the giving of a response that provides no answer to the question of law posed has been held to be prejudicial error. (Internal citation omitted.) *People v. Lewis*, 2022 IL 126705 ¶58.

¶ 28    The failure to answer a jury's question may be an abuse of discretion. *People v. Reid*, 136 Ill. 2d 27, 38-39 (1990). An abuse of discretion occurs where the trial judge's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial judge. *People v. Hall*, 195 Ill. 2d 1, 20 (2000). After determining whether the trial judge's decision to give a jury instruction was an abuse of discretion, we must then determine whether the trial judge's response to the jury's question was correct, and our review is *de novo. People v. Leach,* 2011 IL App (1st) 090339, ¶ 16.

¶ 29    Brown cites *People v. Lewis*, 2022 IL 126705 and *People v. Allen*, 2022 IL App (1st) 190158 to claim that the jury instruction was improper. In *Lewis,* a defendant was charged with involuntary sexual servitude of a minor. *Lewis*, 2022 IL 126705, ¶ 1. After a jury trial, the defendant was found guilty and sentenced to six years' imprisonment. *Id.* The defendant appealed,

arguing *inter* alia defense counsel was ineffective in presenting his entrapment defense, where he failed to object to the circuit court's responses to two jury notes regarding the legal definition of "predisposed." *Id.* The appellate court reversed the conviction, holding that defense counsel's cumulative errors rendered the proceeding unreliable under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984), and our supreme court affirmed the appellate court's ruling. *Id.* The supreme court reasoned that defense counsel's failure to provide a legal definition and acquiescence to the court's instruction substantiated defendant's ineffective assistance of counsel claim. *Id at ¶ 71.*

¶ 30     In *Allen,* this court reversed and remanded for a new trial on the grounds that the trial court's failure to respond to a jury note constituted reversible error. *Allen*, 2022 IL App (1st) 190158, ¶ 59. The court explained that when the jury demonstrated confusion concerning the applicability of "accountability" to IPI Criminal 4th No. 7.02, the trial court committed a reversible error by failing to respond to the jury's question properly. *Id.*

¶ 31     The State argues that *Lewis* and *Allen* are inapposite because the questions posed by the juries in those cases asked legal questions, while the jury question here was procedural. Specifically, the State asserts the question from the jury "related to the jury being deadlocked," and the court was under no obligation to answer the question in a particular manner.

¶ 32     Here, the jury's question involved a question of law. The trial judge discussed the jury's question with both parties, and Brown's counsel suggested a specific proposed answer to the question. Although the jury had not stated that it was deadlocked, and the trial judge did not state that he believed they were deadlocked, the judge decided to give a *Prim* instruction without answering the question. However, the trial judge should have answered their specific question of law. There was simply no reason to refuse to answer the jury's straightforward question of: "If the

decision comes down to 11 to 1, is the defendant to be found not guilty?" The answer to the question was, "no," but the jury did not know that. This information was not contained in the prior instructions. The prior instructions advised the jury that their verdict had to be unanimous. The instructions did not advise the jury of what would happen if their verdict were not unanimous.

¶ 33    The court had a duty to answer the question. *Reid*, 136 Ill. 2d at 39. The *Prim* instruction was not a sufficient answer to the jury's question. The trial judge's failure to answer the question with specificity and accuracy constitutes prejudicial error. *Childs*, 159 Ill. 2d at 229; *People v. Shannon*, 206 Ill. App. 3d 310, 317 (1990). Therefore, we find that giving a *Prim* instruction instead of answering the jury's question was an abuse of discretion under the circumstances of this case. *Averett*, 237 Ill. 2d at 24.

¶ 34    Brown also asserts that the arbitrary deadline set by the trial judge was coercive and placed undue pressure on the dissenting juror. Rather than answer the question, the trial judge responded with a *Prim* instruction along with the following comments:

> "You will continue to deliberate. At 5:00, 5:30 or so if you're still deliberating, I am bringing you back tomorrow and you will deliberate again. And we are going to do this until I decide otherwise. Please go back to the jury room and continue to deliberate."

The trial judge's refusal to answer the jury's question becomes even more troubling because the judge coerced and threatened the jurors that they had to continue to deliberate and continue to come back to the jury room the next day and to do so "until [the judge] decide[s] otherwise."

¶ 35    Brown also argues that the judge's response was both coercive and a threat to the jury. The State responds by arguing that the length of time that is reasonable to permit deliberations to continue is within the sound discretion of the court, and the court did not abuse its discretion by its comments. To determine whether there was coercion, the test is whether, upon examination of

the totality of circumstances, the language used interfered with the jury's deliberations and coerced a guilty verdict. *People v. Fields*, 285 Ill. App. 3d 1020, 1029 (1996). "Since coercion is a highly subjective concept that does not lend itself to the precise definition or testing, the reviewing court's decision often turns on the difficult task of ascertaining whether the challenged comments imposed such pressure on the minority jurors that it caused them to defer to the conclusions of the majority for the purpose of expediting a verdict." *Id.*

¶ 36 The trial judge "may not 'hasten' a verdict by giving the jury an instruction that has the effect of coercing jurors into surrendering their views." *People v. Boyd*, 366 Ill. App. 3d 84, 99 (2006). The judge's threat to the jury stating "I am bringing you back tomorrow and you will deliberate again. And we are going to do this until I decide otherwise" was coercive and conceivably caused the minority juror to feel influenced. We find *People v. Robertson*, 92 Ill.App.3d 806, 808–09 (1981) instructive. In *Robertson*, the trial court delivered a *Prim* instruction to the jury, then commented that it did not see any reason the jury could not arrive at a verdict and stated that the jurors could not be deadlocked. *Id.* at 808. After receiving the instruction from the trial court, the jury reached a verdict of guilty within 30 minutes. *Id.* On appeal, this court ruled that the trial court's instructions were coercive because they unduly pressured the minority jurors to "heed the majority" for the purpose of returning a verdict. *Id.* at 809.

¶ 37 Here, the court's comments had the same coercive effect as the instruction in *Robertson*. The test for inherent prejudice is not whether the jurors were aware of some prejudicial effect, instead, but rather whether "an unacceptable risk is presented of impermissible factors coming into play." *Holbrook v. Flynn*, 475 U.S. 560, 570, (1986). The trial judge's comment that the jury would deliberate until the judge "decide[s] otherwise," indicated that being deadlocked was not an option and placed undue pressure on the dissenting juror to join the majority. Despite the judge's desire

for the jury to reach a verdict, a judge must not use verdict-urging instructions or other techniques to reach a verdict. A court's instruction to a jury to continue deliberating should be simple, neutral, and not coercive. *People v. Campbell*, 163 Ill. App. 3d 1023, 1032, (1987).

¶ 38    The judge's comments leveled a threat to the assumed lone juror, who may not agree with a guilty verdict, that they would be forced to continue to deliberate until an outcome was reached that satisfied the trial judge. "The integrity of the jury's verdict must be protected from coercion, duress or influence." *People v. Gregory*, 184 Ill. App. 3d 676, 680 (1989). A court's instruction to a jury to continue deliberating should be simple, neutral, and not coercive. *People v. Campbell*, 163 Ill. App. 3d 1023, 1032, (1987).

¶ 39    Here, the trial judge gave the impression that the jury had to reach a verdict to satisfy their obligations as jurors. *People v. Branch*, 123 Ill. App. 3d 245, 252 (1st Dist. 1984). Based on the totality of the circumstances, we find that the language used by the trial judge interfered with the jury's deliberations and coerced a guilty verdict. *People v. Wilcox*, 407 Ill. App. 3d 151, 163, (2010). (Directing the jury to continue deliberating until a verdict is reached was coercive because it conveyed to the jurors that they had to arrive at a verdict and did not leave open the option of returning no verdict if they were unable to reach a consensus).

¶ 40    Because we find that the trial judge abused his discretion by failing to answer the jury's question and by using coercive language, we reverse and remand for a new trial. Hence, there is no need to address Brown's claim of excessive sentence.

¶ 41                                IV. CONCLUSION

¶ 42    Under the circumstances of this case, we find that the trial judge abused his discretion by coercing and threatening the jury and failing to answer the jury's question. We also find that the

judge's responses to the jury's question were prejudicial errors. For the reasons explained above, Brown's conviction is reversed, and this cause is remanded for a new trial.

¶ 43    Reversed and remanded.

¶ 44    JUSTICE TAILOR, dissenting:

¶ 45    When then the jury asked, "If the decision comes down to 11 to 1, is the defendant to be found not guilty," the trial court and the State both reasonably interpreted this question to be an indication that the jury had reached an impasse.  As a result, the State agreed with the court's decision to give a *Prim* instruction and the jury was so instructed.  The majority finds that the court abused its discretion when it gave the *Prim* instruction where the court was required to answer the jury's question but did not.  I respectfully disagree and would find that the trial court did not abuse its discretion in giving the *Prim* instruction, not only because it was proper given the jury's question, but also because it adequately answered the jury's question.

¶ 46    Jury questions typically relate to the substantive law applicable to a case, or the evidence. Here, however, the jury's question suggested an impasse in deliberations, which is exactly what the *Prim* instruction was designed to address. See *People v. Prim*, 53 Ill. 2d 62, 74 (1972). Although the jury did not use the word "deadlocked," it is difficult to interpret the jury's question as conveying anything other than being at an impasse.  *Prim* is the appropriate instruction to be given when a jury is at an impasse (*People v. Chapman*, 194 Ill. 2d 186, 222 (2000)), and, in this case, properly advised the jury on how to continue deliberating toward a unanimous verdict without violence to individual judgment. A trial court has discretion on when to respond to a jury's statement that it is deadlocked (*People v.  Cowan*, 105 Ill. 2d 324, 328 (1985) (court did not abuse its discretion in not responding to two notes sent by jury indicating that it was deadlocked and allowing the jury to continue deliberating for eight hours before intervening to give the *Prim*

instruction)), and to do so with the *Prim* instruction. *Chapman*, 194 Ill. 2d at 222; see also *People v. Preston*, 76 Ill. 2d 274, 283-84 (1979) (if court perceives jury is having difficulty reaching a verdict, court is not required to wait to give *Prim* instruction until foreperson says no verdict can be reached).

¶ 47    Even if the jury's question did not reflect an impasse, the court did not abuse its discretion when it gave the *Prim* instruction, where this instruction adequately answered the jury's question. By using the *Prim* instruction, the court properly instructed the jury that Brown could not be found not guilty based on a decision that was 11-1.  The *Prim* instruction specifically informed the jury to keep deliberating and, that the "verdict must be unanimous", "[t]he verdict must represent the considered judgement of each juror," and that the jurors were to "consult with one another and to deliberate with a view towards reaching an agreement."

¶ 48    Moreover, the response proposed by the defense went far astray of the jury's question.  The response proposed by defense counsel stated, "If the jury is not able to reach a unanimous verdict in a criminal case, the case remains on the Court's docket. If the defendant isn't found either guilty or not guilty, no judgement is entered, and the Cook County State's Attorneys is entitled to prosecute the case before the jury."  This instruction seemingly explained the consequences of a hung jury, which is not what the jury asked.  This court has cautioned against a response that would "inform the jury that its inability to reach a verdict might be grounds for a mistrial" because "it would not aid it in its given task, but rather would tend only to complicate the deliberations, making that task more difficult."  *People v. Allen*, 47 Ill. App. 3d 900, 909 (1977).  Even more, this proposed response did not accurately state the procedure regarding the declaration of a mistrial and was misleading in that it could be interpreted to mean that the case could be retried in front of

the same jury. Indeed, at argument, Brown's counsel conceded that Brown's proposed response was not artfully drafted. Thus, there can be no abuse of discretion in these circumstances.

¶ 49    The majority also finds that the arbitrary deadline set by the trial court was coercive and placed undue pressure on the dissenting juror, going so far as to characterize the court's statement as a threat.  In response to the jury's question, the court gave the *Prim* instruction, and added the following comments: "You will continue to deliberate. At 5:00, 5:30 or so if you're still deliberating, I am bringing you back tomorrow and you will deliberate again. And we are going to do this until I decide otherwise. Please go back to the jury room and continue to deliberate."  The majority stated, "[t]he trial court's comment that the jury would deliberate until the court 'decide[s] otherwise,' indicated that being deadlocked was not an option and placed undue pressure on the dissenting juror to join the majority."  Supra, ¶ 37.  I disagree.

¶ 50    A "trial court has broad discretion when responding to a jury that claims to be deadlocked, although any response should be clear, simple, and not coercive." *People v. McLaurin*, 235 Ill. 2d 478, 491 (2009). A trial court's comments are considered coercive if the comments convey to the jurors that they must arrive at a verdict and do not leave open the option of returning no verdict if they are unable to reach a consensus. *People v. Wilcox*, 407 Ill. App. 3d 151, 164-65 (2010). When reviewing the propriety of the court's statements to the jury, the test is whether, under the totality of the circumstances, the court's language coerced or interfered with the deliberations of the jury to the defendant's detriment. *Id*. at 163; *People v. Foster*, 394 Ill. App. 3d 163, 166-67 (2009).

¶ 51    Here, the court's comments were not coercive in that they did not convey to the jury that they must arrive at a verdict. The trial judge gave the jury the *Prim* instruction that advised the jury how to continue to deliberate to a unanimous decision without violence to individual judgment.  Nothing that the trial judge added conflicted with *Prim*.  The court's challenged

comment immediately followed the *Prim* instruction, which included that the jurors need not "surrender [their] honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict." As such, the jury was explicitly instructed that they were not to change their opinions for the sole purpose of returning a verdict.

¶ 52  To the contrary, the court was providing the jury with information regarding the anticipated schedule for deliberations for the remainder of the day and what they could expect going forward, just as it informed the potential jurors prior to *voir dire*. At the start of jury selection, the trial judge told the pool of potential jurors that:

> "The lawyers and I estimate that this case will last approximately two days. My game plan is to finish it today and have you come back tomorrow morning for closing arguments and deliberation. Our usual workday will be from 9:00 to 5:00, but it's possible we may go later if necessary. When I say necessary, that would be for deliberations. I respect your time, many of you have families, children, work obligations, things of that nature, and I would rather go longer than later because it's important that you get home at a safe hour and be with your family. So that's how I do things.
>
>         ***
>
> During the evenings you will be free to go about your own personal business. However, once you begin your deliberations at the end of the case, you will be kept together until you return a verdict or I otherwise direct you. So if you are selected for this jury, you will need to plan accordingly and make any arrangements for later

that day, also bring any medications with you that you may need should deliberations go late."

¶ 53    Like the court's comments prior to *voir dire*, the court's comments to the jury after the *Prim* instruction were purely informational and did not have the effect of hastening a verdict. The court was fulfilling its administrative responsibilities of informing the jury of scheduling.  See *People v. White*, 2011 IL App (1st) 092852, ¶87. The majority's conclusion that the court threatened the jury speculatively attributes an adversarial tone and manner to the court's statement. I see no reason to draw that conclusion, particularly where the court conveyed scheduling information to the jurors prior to *voir dire*. The jury continued to deliberate for another 85 minutes after receiving the *Prim* instruction and scheduling information, and each juror was polled to affirm the jury's verdict of guilty. See *People v. Ford*, 2022 IL App (1st) 172581 (rejecting coercion claim after trial court told jury to continue to deliberate, in response to note from jury after 4.5 hours of deliberation indicating that 11 of 12 jurors voted guilty, and deliberations continued for 1.5 hours after the instruction was delivered). See also *People v. Drayton*, 7 Ill. App. 3d 812 (1972); *Allen*, 47 Ill. App. 3d at 908.  There is just nothing in the record to suggest that the jury felt unduly pressured to reach a verdict under threat of sequestration (*People v. Ferro*, 195 Ill. App. 3d 282 (1990)) or under misconception that they could not be deadlocked (*People v. Robertson*, 92 Ill. App. 3d 806 (1981) (jury erroneously told, "you can't be deadlocked")). The comments complained of here cannot reasonably be interpreted as leaving the jury with no other option but to return a hasty verdict. The court did not coerce the jury's verdict in this case.

¶ 54    For these reasons, I respectfully dissent.